# HARRY H. JACKSON

## *vs.*

## WALKER D. HINES, Director General of Railroads, Operating the Baltimore, Chesapeake & Atlantic Railway Company.

*Carriers—Duty to Person Meeting Passenger—Failure to Light Platform—Contributory Negligence—Crossing in Train Shed.*

A person coming to a railroad station to meet an incoming friend or relation is to be regarded as an invitee or licensee, to whom the carrier owes the duty of reasonable and ordinary care.                                 **pp. 625, 626**

A carrier's duty to keep its stations, their approaches, and surroundings, safe for the use of persons in the exercise of ordinary care, includes the obligation of seeing that such places are properly lighted.                                     **p. 626**

In an action for injuries resulting to plaintiff from his stepping off a platform in defendant's train shed, *held* that the narrowness of the platform, the want of proper lighting, and the absence of a hand rail thereon, in connection with the evidence as to the manner in which the accident happened, afforded sufficient evidence of negligence to warrant its submission to the jury, the platform being apparently intended for the use of persons in plaintiff's situation.                       **p. 627**

A platform in defendant's train shed, which was the only apparent way by which persons could cross from one side of the shed to the other, was constantly used by passengers and others, and was free from any sign or object from which the inference could be drawn that it was not to be used by passengers, *held* to be a part of the station, as to which defendant was bound to use ordinary care so to guard and light it that persons using reasonable care could pass over it in safety.       **p. 628**

Although the burden of establishing contributory negligence is on defendant, yet where it inheres in the plaintiff's own evidence, and must be inferred from it, the court will draw the inference and instruct the jury accordingly.       **pp. 628, 629**

One who, while seeking to meet a passenger on a boat, passed through a door in a train shed onto an open pier, and in returning, this door having been closed, used a door on the other side of the shed, and undertook to cross on a platform from one side of the shed to the other, *held* not guilty of negligence in so doing, there being no warning against the use of such door or platform.                                    p. 629

One who, in a train shed, attempted to cross a platform with which he was not familiar, which he knew to be poorly lighted, narrow, and bordering on a pit or depression two and a half feet deep, while so blinded by lights facing him that he was unable to see where he was going, instead of waiting until his eyes became accustomed to the lights, *held* guilty of negligence contributory to injuries caused by his accidentally stepping off the platform.                              pp. 629-631

*Decided January 13th, 1921.*

Appeal from the Circuit Court for Talbot County (ADKINS, C. J., HOPPER, and WICKES, JJ.).

The cause was argued before BRISCOE, THOMAS, URNER, STOCKBRIDGE, and OFFUTT, JJ.

*Alfred L. Tharp,* for the appellant.

*Joseph B. Seth* and *W. Mason Shehan,* with whom were *Seth, Shehan & Marshall* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the court.

The Baltmore, Chesapeake & Atlantic Railway Company is a common carrier operating certain railway lines between Claiborne and various points on the Eastern Shore of Maryland, and in connection with them it operates a ferry between Baltimore and Claiborne, where it maintains, for use in connection with both its land and water service, a terminal consisting of a pier, waiting room, office, platform, tracks and other facilities for the shipment and discharge of both passengers and freight to and from its boats and trains.

The pier extends westerly into the waters of Eastern Bay, an arm of the Chesapeake, and the water on either side of it

is deep enough to allow the appellee's ferry boats to dock there. Two sets of railroad tracks are laid along the pier from its eastern end to a point on it near where the boats usually dock. On either side of these tracks are two platforms elevated about two feet and seven inches above the surface of the ground, each about twenty-four feet wide, for the use of passengers boarding or leaving the trains. The western ends of these two platforms are connected by a narrower platform of the same elevation and about four feet and eight inches wide. At the end of each set of tracks is a bumper constructed of heavy timber, one of which is about four and one-half inches from this narrow platform. The part of the pier occupied by the tracks and platforms is inclosed on its south, west, and north sides, and is covered by a roof. The part of the pier lying west of this train shed is open and uninclosed. In the partition wall separating the train shed from the open pier are two doors called the south door and the north door, leading respectively from the southern and northern sides of the train shed to the open pier. Around this train shed, at intervals of twenty-five feet, coal-oil lamps are placed at an elevation of about seven feet to furnish light when required. There are no lights on the open pier except a range light for the guidance of mariners, because other lights on this part of the pier would be confusing to pilots and dangerous to navigation. So that when vessels come in at night the two doors leading from the lighted train shed to the open pier are also closed, in order to cut off the light shining through them.

The ferry boats land indifferently on either side of the pier according to the conditions of wind and tide and weather. The appellee's trains, which are run in over the two tracks to meet the boats, come in sometimes on the north tracks and sometimes on the south tracks, as the exigencies of the appellee's business require. When the trains come in on the north track, and the boat is on the south side of the pier, the passengers reach the south side either across the narrow platform, or by going through the north door, and across the

open pier and through the south door. The latter way was
the one which the appellee contends was actually designed
for the use of its passengers, while the narrow platform was
only intended for the use of its employees. There was, how-
ever, at the time of the accident, nothing in the way of a gate,
obstruction, warning, or direction of any kind giving notice
that this narrow platform which afforded a direct open and
apparent connection between the two main platforms was not
for the use of any person having occasion to go from the north
side of the train shed to the south side thereof and in fact,
although at times guards were placed on the pier to direct
passengers over the proper route, the narrow platform was
extensively used not only by the appellee's employees, but
also by its passengers.

On the evening of November 9th, 1918, Harry H. Jack-
son, a farmer, contractor, and engineer, of Easton, came to
the pier to meet his brother, whom he expected on an incom-
ing boat. He arrived there shortly before the boat docked
and walked with the crowd through the south door of the
train shed on to the open pier. He watched the boat come
in and after it had passed him he turned to re-enter the train
shed, but found that the south door had been closed, but that
the north door was open. He crossed the pier to the north
door, entered the train shed through it, and started to cross
over the narrow platform to the south side of the shed where
the passengers from the boat would be discharged. In cross-
ing this platform he walked so near the edge that he caught
his foot in the four and one-half inch space between the
bumper of the north set of tracks and the platform, so that
he fell over the bumper which projected above the platform
at that point to the tracks. As a result of this fall he sus-
tained severe injuries, which interfered with his capacity
for doing the work and labor for which he was fitted, and
to which he had been accustomed.

Just how or why the plaintiff stepped into the crevice or
space between the bumper and the platform does not clearly

appear in the record. The platform, while narrower than the main platform, was still quite wide enough for him to have proceeded safely over it by the use of ordinary care, as others constantly did, if there was light enough for him to have seen his way. His own explanation is that he walked right into the crevice because he was confused by the lighting and did not see where he was going.

At the close of the plaintiff's case, the court directed a verdict for the defendant, and this ruling is the subject of the only exception presented by the record. The ruling rests upon one or both of two propositions, one that there was no evidence in the case legally sufficient to show that the defendant was guilty of negligence, and the other that the plaintiff's own negligence directly contributed to the happening of the accident which resulted in the injuries complained of, and these two propositions we will take up in the order in which they have been named. Before referring, however, to the facts involved in their consideration, we will examine and briefly state certain principles of law applicable to them.

It is generally recognized that a common carrier of passengers, because of the nature and character of its business, must provide such stational facilities and conveniences as are reasonably necessary for the accommodation of its passengers, actual and prospective, and that it owes, to all persons coming to such station through its express or implied invitation, the duty of making and keeping the station, the approaches thereto, and the surroundings thereof where persons lawfully in the station would be likely to go, in a safe condition. 2 *Hutchinson, Carriers,* par. 928; *Burke* v. *Md., D. & V. R. Co.,* 134 Md. 156. Such an invitation may of course be expressed, or it may be implied from the customs and usages of the carrier, its employees and patrons. For instance, the custom of friends and relatives to accompany to the station persons leaving by train, for the purpose of assisting or of comforting them, or merely as a mark of friendly interest and affection, as well as the custom of

friends and relatives going to the station for like reasons to meet persons coming in is so uniform, universal and long-standing, and is so much a part and parcel of the business of carrying passengers, and has been so uniformly acquiesced in for so long by the carrier, that it would be absurd to regard a person coming to a railroad station to meet an incoming friend or relation either as a trespasser or a bare licensee, to whom the carrier owes no duty but that of refraining from wanton or wilful negligence. On the contrary such persons are to be regarded as invitees or licensees, to whom the carrier owes the duty of reasonable and ordinary care, and if they suffer injury as a result of any neglect or default of the carrier in the performance of that duty, it will be responsible therefor. The duty of keeping its stations, their approaches, and surroundings, safe for the use of persons in the exercise of ordinary care, includes the obligation of seeing that such places are properly lighted. A large number of cases illustrating the applications of the principles thus stated to varying conditions of fact are collected in notes to *Galveston, H. & S. F. R. Co.* v. *Matzdorf,* 20 L. R. A. N. S. 833, and to *Johnson* v. *Charlotte, etc., R. Co.,* 20 L. R. A. 520, and *Hutchinson, Carriers,* par. 991. The care which the carrier is required to exercise under such circumstances differs in degree from that which it is bound to exercise in the actual transportation of its passengers, and the obligation for its exercise arises from a different source. For while in the transportation of its passengers, the contract of transportation imposes upon the carrier the duty of exercising "the utmost care and diligence which human foresight can use" to protect the passenger (*B. & O. R. Co.* v. *Breinig,* 25 Md. 378; *P. B. & W. R. Co.* v. *Allen,* 102 Md. 110), in the case of an invitee its duty is to use only ordinary and reasonable care for his protection, and that duty arises by implication as a matter of law. 4 *R. C. L.,* 1053.

Applying these principles to the facts before us, it appears that the appellant was in the appellee's station, at the time

of the accident of which he complains, as an invitee, and that as such the appellee owed him the duty of exercising reasonable and ordinary care to see that the station, its approaches, and surroundings likely to be used by its passengers and persons with them, were in a safe condition. The question then is, in what respect did the appellee fail in the performance of this duty? So far as the record discloses, three particulars are specified: first, that the platform was too narrow; second, that it was not properly lighted, and third, that it was not protected by a hand rail. If the accident had occurred as a result of any defect in the platform itself, the second objection would have had greater force, but the accident did not occur because of any defect in the platform, but because the plaintiff walked off the platform, and while he complains that he was injured by placing his foot in a crevice between the bumper and the platform, yet if his foot had not caught there he must have fallen directly to the tracks, for he had to step off the platform in order to step into this crevice, and while there may not have been light enough to clearly see the floor of the platform, there was light enough to discover its location, and once located little light was needed to follow it, because one edge of it was against the west wall of the train shed. Nor can it be said that a platform four feet eight inches wide is too narrow for a single man to walk on in safety by the exercise of ordinary care, where he knows its width and its direction, and which has along its entire length a wall to guide and steady him. For the same reason negligence cannot be inferred from the absence of a hand rail under the circumstances of this case. A hand rail on the east side of the platform was not necessary to the safety of a single person crossing the platform, because there was no occasion to walk on that edge, since there was on the other side a wall which afforded much better protection than a hand rail. There may be of course circumstances under which it would be necessary, in order to properly protect its passengers and invitees, for the carrier to have placed a guard

rail along this platform, as for instance if it permitted or encouraged a number of persons to use it at the same time, but we are not now dealing with such cases, but with its use by a single person. While therefore it cannot be said that any one of these alleged defects standing alone would support an inference of negligence under the facts of this case, yet the concurrence of the three, the narrowness of the platform, the want of proper lighting, and the absence of a hand rail, in connection with the evidence as to the manner in which the accident happened, afforded sufficient evidence of negligence to warrant its submission to a jury, if the platform was apparently intended for the use of persons in like situation with the plaintiff. The appellee contends that this platform was only for the use of its employees, but this contention is without force. There was nothing in its appearance, save its width, to distinguish it from the two main platforms which it joined, and it was the only apparent way within the train shed by which persons could cross over from one side of the shed to the other, and it was constantly used by passengers and others having business in the station for that purpose; nor was there any warning, notice, obstruction or other sign or object from which the inference could be drawn, that it was not for the use of passengers. Under such circumstances it must be regarded as a part of the station which the appellee should have anticipated might be used by passengers and, when the station was open, it was bound to use ordinary care to see that it was so guarded and lighted that persons using reasonable care could pass over it in safety. 4 *R. C. L.,* page 1218; 24 *L. R. A. N. S.,* 249, vol. 4, 2 *Dec. Dig.,* p. 1504; *L. R. A.,* 1917 D, 892.

This brings us to the question of the plaintiff's contributory negligence. While it is true, as contended by the appellant, that the burden of establishing contributory negligence, as a defence to such an action as this, is on the defendant, yet where it inheres in the plaintiff's own evidence, and must be inferred from it, the court will draw the infer-

ence and instruct the jury accordingly. *State, use of Bacon,* v. *Balto. & P. R. Co.,* 58 Md. 482. It appears from the evidence that, when Jackson entered the north door of the shed, he faced the row of coal-oil lamps placed along its south side, and which were lighted. The lamps on the north side, where he was, were not lighted, and the nearest light to that part of the platform where he was injured was thirty feet therefrom, and between it and the narrow platform was a railway car that cast a shadow over the platform and the bumper at the end of the north tracks.

When the plaintiff entered the shed he was "blinded" by the lights and, before his eyes had become accustomed to the glare, he started to cross the narrow platform to reach the southern part of the station, where the passengers were to be discharged from the boat. Instead of walking along the platform, he appears to have walked across it or at least dangerously near its eastern edge, and stepped from it into the crevice heretofore referred to. The platform at that point, the bumper, and the crevice were all in the shadow and were dark, but since the plaintiff knew the platform was of even width, ran perfectly straight, with a pit on one side and a wall on the other, the fact that the bumper and the crevice were both in the shadow would not account for his action in walking off the platform. There must have been some light there, for he had located the narrow platform and actually started to cross it, and he knew where the wall along the platform was, for he had just come through a door in it. His own explanation of the cause of the accident is probably the correct one, and that is that he was blinded and confused by the lights which he faced when he entered through the north door, and while in that blinded condition he attempted to cross the platform, without using the wall as a guide, and without knowing where he was going, and so fell off the platform. The question therefore is, whether it is negligence in law for a person to attempt to cross a platform with which he is not familiar, which he knows to be poorly lighted, nar-

row, and bordering on a pit or depression some two and a
half feet deep, at a time when he is so blinded that he is un-
able to see where he is going, when by waiting for a short
time for his eyes to become accustomed to the light he could
have seen the bumper and located the edge of the platform,
and escaped the injury he suffered. In connection with this
question the appellee contends that the appellant was negli-
gent to have been in the north shed at all; that he was negli-
gent in going upon the dark open pier through the south
door, and in remaining there until the south door was closed,
and then in going through the north door, and in attempt-
ing to cross over the narrow platform at all, but we do not
agree with that contention. In going through the south door
to the open pier to watch the boat on which his brother was
a passenger come in he did a very natural thing, and the
same thing which a number of others present did. There
was no warning of any kind against persons going through
the open door to the open pier beyond and, in the absence of
any such warning, the fact that he passed through it to the
open pier was not *per se* negligence, nor was the fact that,
when he started to return and found the south door closed,
he left the pier by the north door which was open, and which
was the only other way of leaving. That door was open, the
lighted train shed lay beyond it, there were no warnings for-
bidding persons from passing through it, and the plaintiff
was not negligent in accepting the tacit invitation to enter.
When he did enter he was on the dark north side of the shed,
and wanted to cross to the lighted south side where he could
meet his brother. The narrow platform apparently offered
a way, and the only way across, and was apparently put there
for that purpose. There was nothing on or about it to in-
dicate that it was not for general use, and there was no negli-
gence in the action of the appellant in adopting it as a pas-
sageway from one side of the shed to the other.

We are however compelled to reach the conclusion that
there was negligence in the plaintiff's conduct in attempting

to cross it when he was to use his own language "blinded" by the lights, and that such negligence directly contributed to the accident complained of. The appellee, it is true, was obliged to use ordinary care to see that this platform was so lighted and guarded that it could be used with safety by persons who were themselves in the exercise of reasonable care, but it was not obliged to see that it was so guarded and lighted that persons temporarily blinded could grope about it in safety, and especially when it appeared that such person not only knew of the existence of danger in connection with it, but could, by waiting a short time, have been able to have seen and avoided those dangers.

The appellant was so affected by the lights that he could not see where he was going; he was to some extent familiar with the station, and knew the platform was elevated above the tracks, and that if he walked off it, he might be badly injured; he knew that he was temporarily blinded by the sudden glare of the lights, and was unable to see where he was going, and that in that condition he might easily walk off the narrow platform; and he knew, too, that by waiting a short time his eyes would become accustomed to the light and he would be able to see his way. With this knowledge of his condition and surroundings he deliberately attempted to cross the narrow platform when he could not see where he was going, and in so doing in our opinion he was as a matter of law guilty of negligence, which directly contributed to the happening of the accident in which he was injured, and therefore he is not entitled to recover in this case. *Missouri, K. & T. Ry. Co.* v. *Turley,* 29 C. C. A. 196; 2 *Hutch., Car.,* par. 936, notes 18, 19 and 20, and cases there cited.

For the reason stated there was no error in granting the defendant's prayer, and the judgment appealed from will be affirmed.

*Judgment affirmed.*