# Ann R. Ashby

## v.

# Faison & Associates, Incorporated, et al.

Record No. 921942

February 25, 1994

Present: All the Justices

*Henry L. Marsh, III (Tonnie R. Villines; Clarence M. Dunnaville; Tinya L. Banks; Patricia D. Scales; Hill, Tucker & Marsh,* on briefs), for appellant.

*John R. Easter (Wright, Robinson, McCammon, Osthimer & Tatum,* on brief), for appellee Morton G. Thalhimer Services Corporation.

*Henry H. McVey, III (Charles G. Meyer, III; McGuire, Woods, Battle & Boothe,* on brief), for appellees Faison & Associates, Inc. and One James Center Associates, Ltd.

CHIEF JUSTICE CARRICO delivered the opinion of the Court.

█ In this slip-and-fall case, the plaintiff, Ann R. Ashby (Ashby), recovered a jury verdict in the amount of $600,000 against the defendants, Faison & Associates, Incorporated (Faison), One James Center Associates, Ltd. (James Center Associates), and Morton G. Thalhimer Services Corporation (Thalhimer). Upon motion of the defendants, the trial court set the verdict aside and entered judgment in their favor. We awarded Ashby an appeal.

> When a trial court sets aside a jury verdict, the verdict is not entitled to the same weight as one approved by the court. Nevertheless, we must give the party who received the favorable verdict "the benefit of all substantial conflict in the evidence, and all fair inferences that may be drawn therefrom." Moreover, if any credible evidence supports the verdict, we must reinstate the verdict and enter judgment thereon.

*Fobbs v. Webb Building Ltd. Partnership,* 232 Va. 227, 230, 349 S.E.2d 355, 357 (1986) (quoting *Walton v. Walton,* 168 Va. 418, 423, 191 S.E. 768, 770 (1937)) (citations omitted).

When considered in light of the foregoing principles, the evidence shows that on April 2, 1990, Ashby was injured when she slipped and fell in the lobby of One James Center in the City of Richmond. The building is owned by James Center Associates and operated by Faison. Thalhimer provided janitorial services to the building under a contract with James Center Associates.

Ashby was employed by Dominion Bank, which was located in the James Center. On the day in question, Ashby arrived at the Cary Street entrance to the building about 8:45 a.m. This entrance was covered by a "huge overhang, a canopy covering the front of the building." The other entrance, on 9th Street, was not protected by a canopy.

According to Ashby, a "generalized rain" was falling, and she was using an umbrella. She shook rain from the umbrella outside the building and entered through one of two revolving doors. A rain mat twelve feet in length had been placed just inside the door on the marble floor of the building's lobby.

Ashby walked the length of the rain mat, which she described as "soaked with water," took several steps on the marble floor, then "slipped and fell in the puddles of water that had gathered there." She did not see the water before she fell, but when she "got up [she] brushed the side of [her] clothes . . . and they were wet." When she "looked down at the floor, . . . there were puddles of water."

The evidence showed further that approximately 1,200 people passed through the lobby of One James Center each day, with 8:00 a.m. to 9:00 a.m. as the peak hour. At least thirty people had passed through the lobby in the few minutes preceding Ashby's fall. People entering the building "sometimes" shook their umbrellas on the marble floor of the lobby, and the floor became slippery when wet.

During periods of inclement weather, depending upon the severity of conditions, Faison implemented one or more components of "a three-tier system" for the safety of persons using the lobby. Whenever rain or snow fell or was anticipated, rain mats were placed on the lobby floor at each doorway. In "severe weather," for example, when there was "a lot of rain for a long period of time, . . . bright orange or bright red" cones were used to warn of the presence of water on the floor. Finally, "[d]uring severe conditions," for example, "in the event of a driving rain," a porter was posted in the lobby to "mop up whatever . . . might accumulate."

Shortly after the building opened at 7:00 a.m. on the morning in question, a porter mopped the lobby with a "dry mop" and observed no water on the floor. No other person observed water on the floor

before Ashby fell. At that time, although rain mats were in place on the floor inside the doorways, no warning cones were used and no porter was posted in the lobby.

On appeal, there is no dispute among the parties that Ashby occupied the status of an invitee upon the premises in question. Furthermore, the parties agree that the defendants owed Ashby the duty to use ordinary care to have the premises in a reasonably safe condition for her visit. What is disputed is the test to be applied in determining whether the defendants fulfilled their duty.

Citing this Court's decision in *Memco Stores, Inc. v. Yeatman,* 232 Va. 50, 348 S.E.2d 228 (1986), Ashby says that foreseeability is the appropriate test for determining whether the defendants breached their duty. Ashby argues "there was sufficient evidence from which the Jury could have found that it was raining on the morning of the accident and that the defendants had actual or constructive notice that, whenever it rained, it was foreseeable that water would be brought into the building and the floor would become slippery and create a hazardous condition for invitees."

In *Yeatman,* we said:

If an ordinarily prudent person, given the facts and circumstances Memco knew or should have known, could have foreseen the risk of danger resulting from such circumstances, Memco had a duty to exercise reasonable care to avoid the genesis of the danger.

*Id.* at 55, 348 S.E.2d at 231.

*Yeatman,* however, is distinguishable on its facts and, in our opinion, does not support application of the foreseeability standard in this case. *See Winn-Dixie Stores, Inc. v. Parker,* 240 Va. 180, 183 n.3, 396 S.E.2d 649, 651 n.3 (1990). In *Yeatman,* the hazardous condition on the floor of a Memco store consisted of a "slimy" leaf that had fallen from a peperomia plant. The condition resulted from the affirmative conduct of the defendant in moving the plant from the patio where plants were normally sold and placing it on a furniture display in a manner that caused leaves to fall in the aisle where the plaintiff slipped and fell. 232 Va. at 53-54, 348 S.E.2d at 230.

Here, unlike *Yeatman,* there is no evidence of affirmative conduct on the part of the defendants that caused water to collect on the lobby floor. Indeed, it is Ashby's theory that some third person entering the building either tracked water into the lobby or shook it from an umbrella and that the defendants' conduct in failing to

remove the water or to warn her of its presence caused her injury. This, of course, was passive conduct.

█ In these circumstances, we think the applicable standard is whether the defendants had actual or constructive notice, that is, whether they knew or should have known, of the presence of the water that caused Ashby's fall and failed to remove it within a reasonable time or to warn of its presence. *See Winn-Dixie,* 240 Va. at 184, 396 S.E.2d at 651.

Citing *Shiflett v. Timberlake, Inc.,* 205 Va. 406, 137 S.E.2d 908 (1964), and *Fobbs, supra,* Ashby says she met the "knew or should have known" standard. She argues that, from the evidence, "the jury reasonably could have concluded that the defendants knew, or, in the exercise of ordinary care, should have known of the [hazardous] condition [caused by the water on the lobby floor] and failed to use ordinary care to correct the hazard or to warn [Ashby] of the danger."

In *Shiflett,* however, one of the owners of the premises "was aware" that "the floor had become wet and slippery because of the accumulation of water thereon before [the plaintiff] arrived." 205 Va. at 410, 137 S.E.2d at 912. And, in *Fobbs,* in addition to substantial evidence of the accumulation of an "awful lot of water" that was observed by witnesses both before and after the plaintiff's fall, 232 Va. at 231, 349 S.E.2d at 358, the owner of the premises conceded before the bar of this Court that "it had constructive knowledge that water had been tracked into the building." *Id.* n.*.

█ In sharp contrast, there was no evidence here that any person, including Ashby herself, knew of the existence of water on the lobby floor before she fell. So there was no showing that the defendants actually knew of the existence of a hazardous condition before Ashby fell or that the condition had existed long enough that the defendants should have known of its existence in time to remove it or to warn Ashby of the danger.

█ Ashby argues, however, that the defendants breached the duty they owed her because they "failed to comply with their own precautionary measures on the day in question in that they did not set out the warning cones or have the porter standing by the entrance to mop the water." However, the evidence was insufficient as a matter of law to show that weather conditions on the morning in question were so severe that the use of warning cones or the posting of a porter in the lobby was required. Ashby characterized the rainfall as "generalized" and said that it was "raining fairly hard, but not a thunderstorm." She presented no evidence to show that "a lot of rain" fell and lasted "a long period of time" or that the weather conditions were severe, these

being the circumstances which would have triggered the necessity for Faison to take greater precautionary measures than placing rain mats inside the doorways to the building.*

Ashby cites the testimony of Jim Duncan, a meteorologist called by the defense, as showing that "[i]t had been raining for at least several hours and was still raining when plaintiff arrived at the building." What Duncan stated, however, was not helpful to Ashby. He said that, according to records of the National Weather Service, which reflected "precipitation at the airport," 15/100th of an inch of rain fell in the Richmond area between 6:00 p.m. and 10:00 p.m. on April 1, 1990, that no rain fell between 10:00 p.m. on April 1 and 5:00 or 6:00 a.m. on April 2, and that only a "trace of fog and drizzle," amounting to less than 1/100th of an inch, fell between 5:00 or 6:00 a.m. and 9:00 a.m. on April 2, the period during which Ashby suffered her fall.

■ Finally, Ashby argues that the defendants "failed to inspect the rain mat in the lobby, thereby . . . failing to discover that the mat was soaked with rain." But there was no evidence to show that the soaked condition of the mat contributed in any way to Ashby's fall. Indeed, in her testimony, Ashby specifically disclaimed the theory she now advances that "the water ran down from the mat to form the puddles" she observed on the uncovered marble floor after she fell.

■ Because no credible evidence supported the jury's verdict, the trial court did not err in setting it aside. Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*

---

* Ashby cites *Lagana v. Stop and Shop, Inc.,* 24 Conn. Supp. 64, 186 A.2d 565 (Conn. Super. Ct. 1962), but we find the case inapposite. There, a store owner was held liable for failing to take the very precaution the defendants admittedly took here, *viz.,* providing a large mat for invitees to walk across during periods of inclement weather.