**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GLEN A. RUSHER,
Plaintiff-Appellant,

v.

LOWE'S HOME CENTERS,
INCORPORATED,
Defendant & Third Party

Plaintiff-Appellee,

No. 95-1864

v.

STEVEN J. NIX; JACQUELINE ANNE
WILLIAMS, LIMITED, d/b/a The
Double Deuce,
Third Party Defendants.

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Tommy E. Miller, Magistrate Judge.
(CA-94-440-2)

Argued: April 1, 1996

Decided: August 12, 1996

Before HALL and MOTZ, Circuit Judges, and BUTZNER,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** John Webb Drescher, BREIT, DRESCHER & BREIT,
P.C., Norfolk, Virginia, for Appellant. Neil Samuel Lowenstein,

VANDEVENTER, BLACK, MEREDITH & MARTIN, L.L.P., Norfolk, Virginia, for Appellee. **ON BRIEF:** Michael Lee Goodove, Billie J. Hobbs, BREIT, DRESCHER & BREIT, P.C., Norfolk, Virginia, for Appellant. Dean T. Buckius, VANDEVENTER, BLACK, MEREDITH & MARTIN, L.L.P., Norfolk, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In this diversity action for damages he suffered as the result of a nasty fall at the defendant's business premises, Glen A. Rusher appeals the judgment of the district court, entered on the jury's verdict, awarding him nothing. We affirm.

I.

Rusher owns and operates a drywall installation business. On Saturday, April 13, 1991, he drove his pickup truck to Lowe's Home Centers in Chesapeake, Virginia, to pick up some building materials. Rusher noticed the nearly filled parking lot and discerned that the store was busy. He drove through a security gate around to the rear of the building and pulled up to the loading dock, so that he could enter the store nearer the contractor sales department. Rusher exited his truck and ascended the left of two sets of staircases that had been affixed to either end of the dock.[1]

Rusher went to contractor sales and placed an order for corner bead, then he shopped for some other things. He paid for his pur-

_____

[1] In addition to the two staircases, a long, wide concrete ramp emanating from the extreme right of the dock provided access to the rear of the store.

2

chases and walked back out onto the loading dock, noting that the corner bead had already been loaded into the truck bed. As soon as Rusher got in his truck to leave, however, he realized that he had forgotten the sales receipt for the corner bead, without which he would not be permitted to exit the security gate.

Rusher jumped back out of his truck and looked toward the loading dock area, trying to spot the salesperson who had assisted him with the corner bead. He then noticed for the first time a third set of stairs that were adjacent and perpendicular to the middle of the dock. These stairs were narrower than the other two, and, unlike the others, were not equipped with handrails.

As it turned out, the stairs were not attached to the loading dock by any forces other than friction and gravity, though this crucial bit of information may not have been immediately apparent to a person approaching the stairs head-on. The stairs had been brought to Lowe's by another customer, and had been placed against the dock by an unknown person or persons some minutes before the accident.

Rusher climbed this third set of stairs and re-entered the store; he found the salesperson and retrieved his receipt. Rusher came back outside and attempted to descend the same stairs. When Rusher strode onto the top step, the stairs toppled, sending him crashing to the pavement below.[2]

Rusher broke both wrists and his right ankle. Pins inserted through the skin into the right wrist caused a staphylococcus infection in the bone, which had to be treated with intravenously administered antibiotics. Rusher continues to suffer discomfort from the hardware inserted into his ankle.

_____

[2] The uncontradicted expert testimony was that, upon ascent, the cumulative coefficient of friction between the stairs and the loading dock (at the top) and the stairs and the parking lot (at the bottom), in combination with the down and inward force exerted by Rusher's momentum, were sufficient to allow the stairs to remain in place. Upon descent, however, the outward force generated by Rusher's momentum overcame the other forces at work, causing the stairs to break away. The stairs retained their structural integrity notwithstanding the accident.

3

Rusher filed suit in the district court on May 6, 1994, asserting that Lowe's had negligently allowed the third set of stairs to remain standing against the loading dock. Lowe's denied that it was at fault, and countered that, in any event, Rusher's use of the stairs amounted to contributory negligence.**3** The parties consented to proceed before a magistrate judge,**4** and a jury trial commenced on January 31, 1995.

II.

Among Rusher's witnesses were Keith M. Harris and Curtis L. Drake, both of whom worked for Lowe's on the date of the accident. Harris testified that he had seen the stairs against the loading dock from a distance, but that he did not attempt to remove them. Harris's memory of the incident was spotty; he could not recall whether he had considered the situation to be dangerous or why he had otherwise decided not to act.

Drake, the delivery supervisor, testified that he had been using the telephone in the warehouse manager's office, and that he had periodically looked out across the dock through the office window. He said that he saw two men and another employee, Sheldon Brown, standing behind a small pickup parked at the loading dock. Drake watched the two men unload an object from the truck and place it on the parking lot.

A bit later, Drake glimpsed Rusher ascending the loading dock at its midpoint. Drake then noticed the stairs positioned against the dock, and he connected them mentally with the object that the two men had taken from their pickup. Drake testified that he had finished his conversation and had started outside to move the stairs when he received

_____

**3** Virginia retains the common-law rule that a plaintiff's contributory negligence is ordinarily a complete bar to any recovery. See, e.g., Norfolk & Western Ry. Co. v. Gilliam, 178 S.E.2d 499, 503 (Va. 1971) (the plaintiffs' failure to exercise reasonable care in keeping a lookout precluded an award of damages for injuries sustained when the vehicle in which they were riding collided with an oncoming train).
**4** See 28 U.S.C.A. §§ 636(c)(1), -(3) (West 1996) (permitting the parties in a civil matter to consent to trial before a magistrate judge and to appeal the judgment obtained directly to the court of appeals).

a delivery call on the telephone intercom. Upon hanging up for the second time, Drake looked out the office window just in time to see Rusher fall.

The trial evidence indicated that the accident occurred only a short time after the stairs had been placed against the loading dock. The testimony of several witnesses tended to establish that Rusher descended the stairs within five minutes of ascending them. Brown testified that Rusher fell within six to ten minutes of the stairs being placed on the parking lot, and Rusher himself estimated that only about twenty minutes passed between his initial arrival at the loading dock and the subsequent accident.

The court denied cross-motions for judgment as a matter of law at the end of Rusher's case-in-chief, and again at the conclusion of all of the evidence. Over Rusher's objection, the court decided to submit the issue of his contributory negligence to the jury.

The jury returned a general verdict in favor of Lowe's. Rusher moved once more for judgment as a matter of law, or, in the alternative, a new trial. The motions were denied, and judgment was entered on the verdict. Rusher appeals the court's decision to instruct the jury on contributory negligence, and its denial of his motion for judgment as a matter of law.

III.

In light of the general verdict, it is impossible to tell whether the jury decided that Rusher had been contributorily negligent, or merely that Lowe's had not been negligent to begin with. **5** The distinction is unimportant in this case, however, because the evidence supports either conclusion.

The jury could have found that Lowe's was not negligent for failing to recognize and/or rectify a potentially dangerous situation mere

_____

**5 See Sunkist Growers, Inc. v. Winckler & Smith Citrus Products Co.**, 370 U.S. 19, 29-30 (1962) (error in the admission of evidence or in instructing the jury as to one theory upon which a general verdict may have rested requires the verdict to be nullified).

minutes after it had commenced. See Ashby v. Faison & Assocs., Inc., 440 S.E.2d 603, 605 (Va. 1994) (business owner with notice that a hazardous condition suddenly exists on his premises breaches his duty to an invitee only if he fails to rectify the situation within "a reasonable time"). Although Lowe's had shown Harris and Drake an instructional videotape that implored all of the company's employees to give their immediate attention to potential accident risks, it is for the jury to decide whether these particular employees' actions were reasonable under the circumstances. See Brann v. F.W. Woolworth Co., 24 S.E.2d 424, 426 (Va. 1943) ("Generally, where the test of negligence is the use of reasonable care and no definite standard of care has been established, the question is for the jury, although the facts are not in dispute."). Though the evidence in this case would have permitted the jury to find that Lowe's had been negligent (indeed, the jury may have so concluded), it was not so strong as to compel such a finding.

Likewise, the issue of contributory negligence was properly one for the jury. The stairs themselves were admitted into evidence, and, although Rusher may not have fully appreciated the precise danger they presented, the jury could have concluded from its examination that the narrow, rail-less apparatus posed a number of apparent potential risks, in consideration of which a reasonable and prudent person would have selected one of the sturdier and readily available alternative means to access the dock.

The judgment below is affirmed.

AFFIRMED

6