966 A.2d 972

**Twanda RICHARDSON, et vir.**

v.

**Raymond O. NWADIUKO.**

**No. 2816, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

March 6, 2009.

482

Joel G. Fradin (R. David Adelberg on the brief), Towson, for Appellant.

Paul K. Urey, III, Dunkirk, for Appellee.

Panel: WRIGHT, GRAEFF and DALE R. CATHELL (Retired, Specially Assigned), JJ.

WRIGHT, Judge.

This case involves an alleged slip and fall accident that occurred on June 7, 2003, at the medical office of Raymond O. Nwadiuko, M.D., appellee. On April 26, 2006, Twanda Richardson and her husband, Larry Richardson, appellants, filed a two-count complaint in the Circuit Court for Prince George's County, alleging that appellee was negligent. On October 22, 2007, appellee filed a motion for summary judgment, contending that Mrs. Richardson was a "bare licensee" and not an "invitee" when the incident occurred, and that there is no evidence that appellee had notice and/or knowledge of a dangerous and/or defective condition at the premises. On December 3, 2007, appellants filed a motion in limine, requesting that certain evidence be excluded at trial.

A hearing was held on January 18, 2008, at which time the circuit court granted appellee's motion for summary judgment, then proceeded to deny appellants' motion in limine. Both orders were filed on January 29, 2008. Appellants noted this timely appeal.

## QUESTIONS PRESENTED[1]

1) Did the trial court err in finding that Mrs. Richardson was a bare licensee, and not an invitee, on appellee's property?

2) Did the trial court err in finding that appellants failed to make a prima facie showing of negligence?

3) After granting appellee's motion for summary judgment, did the trial court err in ruling upon and denying appellants' then-moot motion in limine?

Although we hold that Mrs. Richardson was an invitee, not a bare licensee, at the time of the incident, we affirm the circuit court's judgment because, even with Mrs. Richardson's having invitee status, appellants failed to make a prima facie showing of negligence. As a result, we need not address the third question.[2]

## FACTS

Appellee is the owner of real property located at 9831 Greenbelt Road, Suite 101, in Prince George's County ("property"). He has held sole title to the property since he acquired it in December 1998. Appellee leases the property to the Maryland Allergy & Asthma Center, and also uses the property as an office, where he practices medicine as an allergist.

At the time of the alleged slip and fall, entry into the property was obtained through a door that opened directly into the patients' waiting room. Once inside, one would find a rectangular area of smooth tile[3] that measures approximately

---

1. Appellants' questions have been rephrased for clarity.

2. In their brief, appellants stated: *"If* the Appellate Court should reverse the lower court's decision on the Summary Judgment and remand the case back to the Circuit Court for trial, Appellants request that the Trial Court's denial of their Motion In Limine be vacated." (Emphasis added).

3. In his deposition, appellee stated that he believed the tiles are made of vinyl. There is no evidence in the record to show that the tiles are, in

32 × 40 inches, immediately adjacent to the doorway. The entire waiting room, with the exception of the tiled area at the entrance, was carpeted. Because the width of the tiled area was the same width as the doorway, however, it was impossible for anyone to avoid stepping on the tiled area when entering the property.

Mrs. Richardson had been appellee's patient since April 2000. On her suggestion, Mr. Richardson also became a patient in April 2003. On the morning of June 7, 2003, Mr. Richardson had a scheduled appointment with appellee at the property. Prior to this date, appellants had frequently gone to appellee's office together when one of them had an appointment. On those occasions, upon entering the property, they would go to the receptionist's desk together and, after the spouse with an appointment signed in, the receptionist would invite them both to have a seat in the waiting room. The appellants had never been told by appellee or any member of appellee's staff that the waiting room was not available for use by persons who did not have an appointment, nor were there signs containing such a prohibition posted anywhere on the premises. When Mrs. Richardson had her initial allergy testing in 2000, Mr. Richardson accompanied her to the testing area and stayed with her while the tests were being performed. Appellee did not object to Mr. Richardson's presence. Appellee admitted that he never forbade a patient from bringing his or her spouse along for an appointment, but stated that he also did not encourage it.

On June 7, 2003, at approximately 11 a.m., appellants arrived at the property. According to appellants, it was raining heavily and had been raining steadily since the night before. Appellee admitted that it was raining when he arrived at the property earlier that morning. Appellee began seeing patients at approximately 9 a.m. and saw patients continuously until appellants arrived.

---

fact, vinyl. For our purposes, however, we will assume, as the parties did, that the tiles are vinyl.

After Mr. Richardson parked, appellants exited the vehicle and walked to the entrance to the property. According to appellee, there was a mat located just outside the entrance, beneath an overhang. Appellee added that when it rained, the mat became wet and, on those occasions, persons entering the property had no means of drying their shoes before entering. Mrs. Richardson could not recall whether there was a mat present, but stated that if a mat had been there, it could not have been dry at the time they entered.

Mr. Richardson opened the door to the property, at which time Mrs. Richardson closed the umbrella she had been using, and stepped through the doorway. There was no mat inside the entrance and, because Mrs. Richardson was wearing slip-on shoes with rubber soles, she infers that the bottoms of her shoes were still wet when she entered the property. Mrs. Richardson's first and only step into the property was with her left foot. As soon as she took that step, she claims that her left foot slid out from under her and she fell to the floor. After she fell Mrs. Richardson felt water on her pants and hands. There is no evidence as to whether this water came from her shoes, her clothing, or the tiled floor. As a result of her fall, Mrs. Richardson sustained severe and permanent injuries to her right knee, lower back, and tailbone area. Her orthopedic surgeon has opined that she is presently permanently and totally disabled as a result of these injuries.

On July 23, 2007, Mrs. Richardson was deposed. She stated that she had no personal knowledge that anyone ever tripped and fell, or slipped and fell, at the property before June 7, 2003. Mrs. Richardson thought that she slipped and fell because the floor was wet, but she had no personal knowledge as to how long that area had been wet. She also had no idea how much water was in the area when she slipped, but said it was enough to wet the back of her trousers and her hands. Mrs. Richardson stated that her husband did not slip and fall on June 7, 2003, nor did anyone else slip and fall trying to assist her. She believed that vinyl, by itself, is not dangerous, and when she entered the property on June 7, 2003, she saw nothing to indicate that there was a dangerous situation or

defective condition at the property. According to Mrs. Richardson, the fact that it had been raining and the fact that there was vinyl on the floor did not lead her to the conclusion that there was a dangerous or defective condition.

Mr. Richardson was also deposed on July 23, 2007. He stated that he had never slipped and fallen anywhere in the property. He also stated that he could not quantify the amount of water that was in the area where Mrs. Richardson claims to have slipped and fell on June 7, 2003.

Appellee was deposed on August 29, 2007. From personal knowledge, he stated that no one else had ever slipped and fallen at the property from the time he acquired it in 1998 until June 7, 2003. Appellee also stated that he knew, before Mrs. Richardson fell, that people can slip on wet vinyl or can slip on vinyl if their shoes are wet. He believed, however, that just because vinyl is wet does not mean that a person would slip and fall on it. Because there was no perception of any danger, and no one had ever fallen there before, appellee thought that placing a rubber mat on the vinyl tiles was unnecessary.

Prior to the hearing, appellee also served answers to interrogatories that were propounded upon him by appellants. In those answers, appellee stated he had no knowledge that anyone specifically inspected the area where the alleged incident occurred, but added that neither he nor his employees would allow a dangerous condition to exist if they had notice or knowledge of it. During his deposition, appellee admitted that, prior to the incident, he had been in stores with signs saying "Caution–Wet Floor." He understood that those signs were posted to urge people to be careful because a wet floor could be slippery and cause people to slip and fall. Appellee added that, when he saw those signs, he would be cautious so as to avoid falling on a wet floor. In his answers to interrogatories, however, appellee maintained that, on June 7, 2003, neither he nor his employees "had any notice or knowledge that there was any potential hazard since no one had ever

slipped and fallen at the medical office before the alleged incident."

## STANDARD OF REVIEW

"In reviewing the grant of a motion for summary judgment, appellate courts focus on whether the trial court's grant of the motion was legally correct." *Laing v. Volkswagen of Am., Inc.*, 180 Md.App. 136, 152–53, 949 A.2d 26 (2008) (citations omitted). In so doing, " 'this Court reviews the record in the light most favorable to the non-moving party.' " *Chesek v. Jones*, 406 Md. 446, 458, 959 A.2d 795 (2008) (quoting *Anderson v. Council of Unit Owners of the Gables on Tuckerman Condo.*, 404 Md. 560, 570, 948 A.2d 11 (2008)) (additional citation omitted). "Summary judgment is appropriate if 'there is no genuine dispute as to any material fact and . . . the party in whose favor judgment is entered is entitled to judgment as a matter of law.' " *Rivers v. Hagner Mgmt. Corp.*, 182 Md.App. 632, 646, 959 A.2d 110 (2008) (quoting Md. Rule 2–501(f) (2008)). "Thus, the first task for the reviewing court is to determine whether a dispute of material fact exists; 'where such dispute is absent . . . we proceed to determine whether the moving party is entitled to judgment as a matter of law.' " *Id.* (quoting *Hill v. Knapp*, 396 Md. 700, 711, 914 A.2d 1193 (2007)).

## DISCUSSION

Appellants assert that the circuit court erred in granting summary judgment because Mrs. Richardson was an implied invitee, not a bare licensee, at the time of the incident and, therefore, appellee owed her a higher duty of care. Although we agree with appellants' assertion that Mrs. Richardson was an invitee, we nonetheless hold that the circuit court did not err in granting summary judgment because appellants failed to make a prima facie showing of negligence. Specifically, the circuit court correctly concluded that appellants "failed to establish the existence of a dangerous or defective condition,

let alone any knowledge on the part of [appellee] of such a condition."

■ The duty owed by a property owner to someone on the property varies, depending upon the latter's legal status on the property at the time of the incident. *See Deboy v. City of Crisfield,* 167 Md.App. 548, 555, 893 A.2d 1189 (2006) (citing *Rowley v. Mayor,* 305 Md. 456, 464, 505 A.2d 494 (1986); *Rehn v. Westfield Am.,* 153 Md.App. 586, 592, 837 A.2d 981 (2003); *Wells v. Polland,* 120 Md.App. 699, 709, 708 A.2d 34 (1998); and *Doehring v. Wagner,* 80 Md.App. 237, 243, 562 A.2d 762 (1989)). In *Deboy v. City of Crisfield,* this Court explained:

The highest duty is that owed to an invitee; it is the duty to "use reasonable and ordinary care to keep [the] premises safe for the invitee and to protect [the invitee] from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for [the invitee's] own safety will not discover." *Rowley,* 305 Md. at 465, 505 A.2d 494 (citations omitted). By contrast, the landowner or occupier owes no duty to licensees or trespassers, except to abstain from willful or wanton misconduct or entrapment. *Wells,* 120 Md.App. at 710, 708 A.2d 34 (citing *Mech v. Hearst Corp.,* 64 Md.App. 422, 426, 496 A.2d 1099 (1985)).

Invitee status can be established under one of two doctrines: (1) mutual benefit or (2) implied invitation. *Wells,* 120 Md.App. at 710, 708 A.2d 34; *Howard County Bd. of Educ. v. Cheyne,* 99 Md.App. 150, 155, 636 A.2d 22 (1994). Under the mutual benefit theory, the invitee generally enters a business establishment for the purpose of purchasing goods or services. 120 Md.App. at 710, 708 A.2d 34. This theory places great weight upon the entrant's subjective intent, and inquires into whether the entrant intended to benefit the landowner in some manner. *Id.*

By contrast, the implied invitation theory is objective and does not rely on any mutual benefit. *Id.* Rather, the circumstances control, such as custom, habitual acquiescence of the owner, the apparent holding out of the premises for a particular use by the public, or the general arrange-

ment or design of the premises. *Id.* at 710–11, 708 A.2d 34. The gist of the implied invitation theory is the distinction between mere passive acquiescence by an owner or occupier in certain use of his land by others and direct or implied inducement. *Crown Cork & Seal Co. v. Kane,* 213 Md. 152, 160, 131 A.2d 470 (1957); *Cheyne,* 99 Md.App. at 156, 636 A.2d 22.

*Deboy,* 167 Md.App. at 555–56, 893 A.2d 1189.

The *Deboy* Court also held that, in order to be considered an invitee under the implied invitation theory, it is necessary that:

"the person injured did not act merely on motives of his own ... but that he entered the premises because he was led by the acts or conduct of the owner or occupier to believe that the premises were intended to be used in the manner in which he used them, and that such use was not only acquiesced in, but was in accordance with the intention or design for which the way or place was adapted and prepared or allowed to be used."

*Id.* at 556, 893 A.2d 1189 (quoting *Kane,* 213 Md. at 160, 131 A.2d 470). "Thus the fact that a building is used as a shop gives the public reason to believe that the shopkeeper desires them to enter or is willing to permit their entrance, not only for the purpose of buying, but also for the purpose of looking at the goods displayed therein or even for the purpose of passing through the shop." Restatement (Second) of Torts § 332 cmt. c (1965).

 A licensee, on the other hand, "is one who enters upon property, not as a social guest, but for his or her own convenience or purpose and with the landowner's consent." *Wagner v. Doehring,* 315 Md. 97, 102, 553 A.2d 684 (1989) (citing *Mech, supra,* 64 Md.App. at 426, 496 A.2d 1099). As we previously stated, "[n]o duty is owed to a bare licensee except that he or she may not be wantonly or willfully injured or entrapped, nor may the occupier of land 'create new and undisclosed sources of danger without warning the licensee.'"

*Wagner,* 315 Md. at 102, 553 A.2d 684 (quoting *Sherman v. Suburban Trust Co.,* 282 Md. 238, 242, 384 A.2d 76 (1978)).

In this case, Mrs. Richardson entered the property on June 7, 2003, to accompany her husband during his medical appointment with appellee. Because Mrs. Richardson herself did not have a medical appointment on that day, she did not enter the property with the intent of benefitting appellee in some manner and, therefore, she was not an invitee under the mutual benefit theory.

A review of relevant Maryland cases leads us to conclude that Mrs. Richardson was an invitee under the implied invitation theory. The Court of Appeals discussed the application of the implied invitation theory in *Kalus v. Bass,* 122 Md. 467, 89 A. 731 (1914). In that case, the defendant posted a sign offering "Rooms for Rent." Mr. Kalus, after making an inquiry, was told by defendant to look at the rooms first and if the rooms suited him, they would discuss the amount of the rent. Mr. Kalus went to the property and took the plaintiff, his 12–year–old son, with him. While on the premises, a stairway gave way and both Mr. Kalus and his son fell, sustaining injuries. The issue before the appellate court was whether the defendant owed a duty to the son. In holding that the defendant extended an implied invitation, the Court of Appeals reasoned, *id.* at 473, 89 A. 731:

> It is a familiar principle that the natural and probable consequences of an act are presumed to have been intended, and there can be no doubt that the conduct of the defendant in the case at bar was the original and efficient cause which induced the plaintiff's visit with his father to the premises in question with a view to their possible occupation by the family as tenants. The principle of implied invitation is sufficiently broad in its reason and policy to include such an inducement. . . .

The Court of Appeals revisited the issue of implied invitation in *Jackson v. Hines* 137 Md. 621, 626–27, 113 A. 129 (1921), and held that a common carrier owed a duty of reasonable and ordinary care to persons who came to the

station to accompany departing passengers or to meet arriving passengers. The *Jackson* Court stated that

> the custom of friends and relatives to accompany to the station persons leaving by train, *for the purpose of assisting or of comforting them, or merely as a mark of friendly interest and affection,* as well as the custom of friends and relations going to the station for like reasons to meet persons coming in, is so uniform, universal, and long-standing, and is so much a part and parcel of the business of carrying passengers, and has been so uniformly acquiesced in for so long by the carrier, that it would be absurd to regard a person coming to a railroad station to meet an incoming friend or relation either as a trespasser or a bare licensee to whom the carrier owes no duty but that of refraining from wanton or willful negligence.

*Jackson, supra,* 137 Md. at 625–26, 113 A. 129 (emphasis added). Further, in *Kane,* 213 Md. at 159, 131 A.2d 470, the Court of Appeals recognized that "there are many cases in which an invitation has been implied from circumstances, such as custom, the acquiescence of the owner in habitual use, the apparent holding out of premises to a particular use by the public, or simply in the general arrangement or design of the premises." As we discuss below, the same principles apply to a doctor's office.

■ In this case, appellants aver that, prior to the incident, they frequently went to appellee's office together, even when only one of them had an appointment. Appellants made clear that on those occasions, neither appellee nor any member of appellee's staff ever informed them that the waiting room was not available for use by persons who did not have an appointment. Further, appellee never forbade either appellant from bringing his or her spouse along, with regard to both the waiting room and the medical testing room. From this set of facts, it is reasonable to conclude that an invitation has been implied from the circumstances because it was Mr. and Mrs. Richardson's custom to accompany each other to appellee's office and appellee never discouraged them from doing so.

Cases from other jurisdictions are also instructive. For example, in *Roberts v. Menorah Med. Ctr.*, 777 S.W.2d 330, 332–33 (Mo.App.1989), the Missouri Court of Appeals, Western District, held that the plaintiff, who fell in a hospital hallway while trying to visit her sick brother, was an invitee and not a licensee. In that case, the plaintiff initially went to the emergency room, expecting to find her brother. She soon discovered, however, that her brother had been taken to his doctor's office. As plaintiff made her way to the doctor's office, "[s]he rounded a curve in the hall and fell." *Id.* at 331. The *Roberts* Court stated:

> Visiting those who are in the hospital is indeed under the Restatement definition "a purpose for which the land is held open to the public." It is irrelevant that [plaintiff]'s brother was not in emergency but at his doctor's office. Her status as an invitee is grounded upon her purpose in visiting the hospital and whether that purpose is consistent with the nature of the business conducted there.

*Id.* at 332 (quoting Restatement (Second) of Torts § 332 (1965)).

Similarly, in *Lesyk v. Park Ave. Hosp., Inc.*, 29 A.D.2d 1043, 289 N.Y.S.2d 873 (1968), the plaintiff drove a friend to the hospital to visit his sick wife and, while waiting for his friend and looking after the friend's three-year-old child, the plaintiff fell in the defendant-hospital's parking lot. The Supreme Court, Appellate Division, Fourth Department of New York held that "[t]he situation of one such as the plaintiff serving the convenience and necessity of a visitor, while not as directly related to the hospital-patient relationship as that of the visitor, nevertheless involves the same purpose and implied invitation and reasonably places him in the same legal position with reference to the hospital as the visitor himself." *Id.* at 1043, 289 N.Y.S.2d 873. The *Lesyk* Court added: " 'It is not necessary that the visitor shall himself be upon the land for the purposes of the possessor's business. The visit may be for the convenience or arise out of the necessity of others who are themselves upon the land for such a purpose.' " *Id.* (quoting Restatement (Second) of Torts § 332 cmt. g (1965)).

Appellee relies on *Deboy, supra,* 167 Md.App. 548, 893 A.2d 1189, in support of his position that Mrs. Richardson was a bare licensee on the day of the incident. In *Deboy,* the plaintiff was walking her dogs through a piece of property owned by a company and improved by a convenience store, when she stepped on a water meter housing cover maintained by the city. The cover moved, causing the plaintiff to fall and injure her left leg and knee. The plaintiff brought suit against the landowner and store, alleging negligence, but the circuit court granted summary judgment in favor of the defendants. In affirming the circuit court's decision, this Court held that plaintiff "was at most a bare licensee" because "there is no indication that [the defendants] intended, let alone induced, visitors to use its property for dog walking." *Id.* at 558, 893 A.2d 1189. The plaintiff "was on the property solely for her own purposes, and although [the defendants] may have acquiesced to her use of the property, [she] cannot be considered an invitee under the implied invitation theory." *Id.*

The present case differs from *Deboy* because, in *Deboy,* the plaintiff "specifically and unequivocally stated in her deposition that she had no intention of stopping at the [store] to purchase anything. Rather, she was on the property for the sole purpose of walking her dogs." *Id.* There was no evidence on the record to indicate that the store intended or designed its property to be used by visitors for that purpose. In this case, however, both Mr. and Mrs. Richardson were patients of the appellee and had accompanied each other to appellee's office on previous occasions. During those times, neither appellee nor his staff ever indicated that either appellant was unwelcome if he or she did not have an appointment. On June 7, 2003, Mrs. Richardson entered the property for the purpose of obtaining medical care for her husband, and providing care is appellee's business. Thus, Mrs. Richardson was an invitee under the implied invitation theory.[4]

---

4. It is worth noting that appellee was also a lessor of the property. The Restatement (Second) of Torts § 359 (1965) imposes certain duties on "[a] lessor who leases land for a purpose which involves the admission

Having determined Mrs. Richardson's legal status on the day of the incident, we now turn to appellants' allegation of negligence. Because Mrs. Richardson was an invitee, appellee owed her "a duty to use reasonable and ordinary care to keep the premises safe" and to protect her from injury caused by an unreasonable risk that she, even though exercising ordinary care for her own safety, would not have discovered. *Univ. of Md. E. Shore v. Rhaney*, 159 Md.App. 44, 56, 858 A.2d 497 (2004), *aff'd on other grounds*, 388 Md. 585, 880 A.2d 357 (2005) (citation omitted). In order to sustain a cause of action against appellee, appellants "must prove not only that a dangerous condition existed but also that the appellee[ ] 'had actual or constructive knowledge of the dangerous condition and that the knowledge was gained in sufficient time to give [him] the opportunity to remove it or to warn the invitee.' " *Joseph v. Bozzuto Mgmt. Co.*, 173 Md.App. 305, 315, 918 A.2d 1230 (2007) (quoting *Rehn v. Westfield Am.*, 153 Md.App. 586, 593, 837 A.2d 981 (2003), *cert. denied*, 380 Md. 619, 846 A.2d 402 (2004)) (additional citations omitted).

Appellants argue that this case is similar to *Mondawmin Corp. v. Kres*, 258 Md. 307, 266 A.2d 8 (1970). We disagree. In *Kres*, the plaintiff slipped on a wet staircase at Mondawmin Mall and sustained injuries. The staircase, which was circular, "wound around over a pool in which there were water fountains, and ultimately ended at the lower level of the Mall." *Id.* at 311, 266 A.2d 8. Evidence established that the pool had several fountains that sprayed water, and that the water often reached the staircase. The *Kres* Court held that "there was sufficient evidence in the case of Mondawmin's primary negligence to go to the jury" because "Mondawmin knew or should

---

of the public," subjecting him "to liability for physical harm caused to persons who enter the land for that purpose." Further, comment g of that section states:

It is not necessary that the public shall enter, or be expected to enter, in large numbers at one time. The rule applies equally where the purpose of the lease involves the admission of the public two or three at a time, as in the case of a small beauty shop, *or a doctor's office.* (Emphasis added).

have known of a dangerous condition and was under a duty to warn its business invitees of that condition." *Id.* at 314, 318, 266 A.2d 8.

■ The present case is distinguishable because in *Kres* there was evidence that an employee of one of the stores in the Mall "had spoken to Mr. Pennypacker, the manager of the Mondawmin Shopping Center, and told him that 'the ornamental fountain spray should be lowered to eliminate the steps getting wet.'" *Id.* at 317, 266 A.2d 8. In addition, another store employee "testified that prior to the injury to [the plaintiff], he had on occasions observed the fountain spray splash into the pool and saw that the steps got wet from the splashing." *Id.* No such notice was given to appellee in this case. Rather, appellee made clear that "no one had ever slipped and fallen at the medical office before ...," since he acquired the property in 1998. Further, on the day of the incident appellee had been seeing patients continuously for two hours before appellants arrived and there was no evidence that any of the other patients slipped and fell on the tiles, nor did anyone slip and fall while trying to assist Mrs. Richardson.

This case is akin to *Rawls v. Hochschild, Kohn & Co.,* 207 Md. 113, 123, 113 A.2d 405 (1955), where the Court of Appeals held that there was no legally sufficient evidence that the defendant store was guilty of negligence because the mere presence of water on the stairway where plaintiff fell "was not such as to warrant the inference that it had been there long enough to have enabled defendant to discover and correct it by the exercise of ordinary care." In *Rawls,* the plaintiff was the first person to enter the north door of the store after it was unlocked. As such, she urged that, "since she was presumably the first customer to walk down the stairway leading to the basement, the water must have been dropped by an employee of the store." *Id.* at 122, 113 A.2d 405. The Court rejected this argument, stating that "it could not be proved that plaintiff was the first customer to enter the store and to walk down the stairway to the basement" because there was another entrance to the store. *Id.* at 122–23, 113 A.2d

405. Further, the Court found it plausible that, "if there was any water on the stairway, it might have come from plaintiff's clothes when she fell down the stairway to the basement." *Id.* at 123, 113 A.2d 405.

In this case, the evidence on the record is similar to that in *Rawls*. During her deposition, Mrs. Richardson testified that she slipped and fell because the floor was wet, but she had no personal knowledge as to how long that area had been wet. She also had no idea how much water was in the area when she slipped, but she stated that her husband, who walked in with her, did not slip and fall. Further, Mrs. Richardson said that, when she entered the property on June 7, 2003, she saw nothing to indicate that there was a dangerous situation or defective condition at the property. Thus, even if the floor, in fact, was wet before appellants' arrival, it may not have been noticeable to anyone in appellee's office. There is nothing before the court to show that anyone brought the wet floor to appellee's attention. *See Montgomery Ward & Co. v. Hairston*, 196 Md. 595, 598–99, 78 A.2d 190 (1951) (holding that the evidence was "legally insufficient to support an inference of constructive notice" where plaintiff, who slipped on an unknown substance, could not say that the substance was placed there by employees of defendant, that its presence was known to them, or that it was there for an appreciable time before accident).

Again, we find that a relevant case from another jurisdiction is instructive. In *Ashby v. Faison & Assocs., Inc.*, 247 Va. 166, 440 S.E.2d 603 (1994), the plaintiff slipped and fell in puddles of water that had gathered on the marble floor of a building lobby. According to the plaintiff, it had been raining outside and she was using an umbrella. Before entering the building, she shook the rain off her umbrella. Once inside, she walked the length of the rain mat that was placed just inside of the door, and which she described as being "soaked with water." *Ashby, supra*, 247 Va. at 168, 440 S.E.2d at 605. She then took several steps before she slipped and fell. "She did not see the water before she fell, but when she 'got up [she] brushed the side of [her] clothes ... and they were

wet.' " *Id.* On appeal, the *Ashby* Court concluded, *id.* at 170, 440 S.E.2d 603:

> [T]here was no evidence ... that any person, including [plaintiff] herself, knew of the existence of water on the lobby floor before she fell. So there was no showing that the defendants actually knew of the existence of a hazardous condition before [plaintiff] fell or that the condition had existed long enough that the defendants should have known of its existence in time to remove it or to warn [plaintiff] of the danger.

The facts in this case are very similar to those in *Ashby.* First, Mrs. Richardson, carrying an umbrella, came into the property and out of the rain. Second, Mrs. Richardson closed her umbrella and proceeded to walk on a mat that was soaked with rain. Third, Mrs. Richardson walked on a smooth surface, then slipped and fell. Like the plaintiff in *Ashby,* Mrs. Richardson did not see the water before she fell, but felt it on her clothes immediately after the incident. In this case, as in *Ashby,* there was no showing that appellee knew of the slippery condition or that the condition had existed long enough that appellee had constructive notice of it.

For the foregoing reasons, we affirm the judgment of the circuit court. As such, we need not address the circuit court's denial of appellants' motion in limine.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**