*Damien A. Macias v. Summit Management,*
No. 1130, Sept. Term, 2018
Opinion by Leahy, J.

**Motion for Summary Judgment > Scope of Review**

Maryland premises-liability law allows disposition on summary judgment when the pertinent historical facts are not in dispute. *See Hansberger v. Smith*, 229 Md. App. 1, 13, 21-24 (2016); *see also Richardson v. Nwadiuko*, 184 Md. App. 481, 483-84 (2009).

**Negligence > Premises Liability >Foreseeability**

Foreseeability—the principal consideration in actionable negligence—is not confined to the proximate cause analysis. *See Kennedy Krieger Institute, Inc. v. Partlow*, 460 Md. 607, 633-34 (2018); *Valentine v. On Target, Inc*., 112 Md. App. 679, 683-84 (1996), *aff'd*, 353 Md. 544 (1999).

**Negligence > Premises Liability >Duty**

The status of an entrant, and the legal duty owed thereto, are questions of law informed by the historical facts of the case. *See Troxel v. Iguana Cantina, LLC*, 201 Md. App. 476, 495 (2011).

**Negligence > Duty to Invitees > Condominium Associations**

Condominium unit owners and their guests occupy the legal status of invitee when they are in the common areas of the complex over which the condominium association maintains control. Barring any agreements or waivers to the contrary, the condominium association is bound to exercise "reasonable and ordinary care" to keep the premises safe for the invitee and to "protect the invitee from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for his [or her] own safety, will not discover." *See Bramble v. Thompson*, 264 Md. 518, 521 (1972).

**Negligence > Premises Liability >Legal Status**

An entrant's legal status is not static and may change through the passage of time or through a change in location. *See Levine v. Miller*, 218 Md. 74, 78-79 (1958). In other words, an entrant can lose invitee status if he or she remains on the premises beyond a specified time or enters an area that is off limits to guests and the general public.

**Negligence > Legal Status**

The mere act of climbing a climbable object, located in an area of a condominium complex in which child was allowed to be, did not suddenly change child's legal status from invitee to trespasser—such a transposition is not favored by contemporary decisional law.

**Negligence > Premises Liability >Duty**

Property owners do not owe social guests a duty to "inspect the land to discover possible or even probable dangers," Restatement (Second) of Torts § 342, cmt. d. (1965); whereas, property owners must use reasonable care to inspect and make the premises safe for invitees. *Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md. App. 381, 388 (1997).

**Negligence > Premises Liability >Notice**

An invitee plaintiff must show that the landowner had actual knowledge of a defect or "by the exercise of reasonable care would discover the condition."  Restatement (Second) of Torts §, 343 (1965); *Deering Woods Condo. Ass'n v. Spoon*, 377 Md. 250, 264–65 (2003).

**Negligence > Premises Liability> Notice**

To generate a triable issue, under even the most demanding standard of care, some evidence that the premises owner knew or should have known of the dangerous condition is required. *Deering Woods Condo. Ass'n v. Spoon*, 377 Md. 250, 273 (2003).

**Negligence > Premises Liability> Notice**

The duty to inspect is a function of the landowner's knowledge, actual or constructive, of the unreasonable risk.  *Deering Woods Condo. Ass'n v. Spoon*, 377 Md. 250, 264–65 (2003).

Circuit Court for Montgomery County
Case No. 434536-V

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1130

September Term, 2018

_____

DAMIEN A. MACIAS

v.

SUMMIT MANAGEMENT, INC.

_____

Meredith,
Leahy,
Beachley,

JJ.

_____

Opinion by Leahy, J.

_____

Filed: November 21, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Eight-year-old Damien Macias and his two younger siblings, Gabrial and Olivia, accompanied their mother one summer day in 2013 to the Waters House Condominium complex in Germantown, Maryland to visit their grandparents. While playing outside, Damien and Gabrial climbed atop the Waters House community sign made of large stones ("community sign"). After about ten minutes the boys decided to jump down and go back inside. When they went to dismount, they held onto the edge of a flat stone, which identifies the complex as "Waters House." The flat stone dislodged from the larger stonework holding it, causing the boys to fall to the ground, and the flat stone to fall on top of Damien. Damien suffered serious injuries to his chest and legs as a result and was transported to Children's Hospital for treatment.

Damien, and his father as next friend, filed a negligence action in the Circuit Court for Montgomery County against the Council of Unit Owners of Waters House Condominium ("Council") and Summit Management ("Summit" or collectively with Council as "Appellees"). The circuit court granted summary judgment in favor of Appellees. The court ruled that Damien was a bare licensee when he climbed the community sign because he was on it without the consent of the owner. The court also held, however, that even if Appellees owed Damien a greater duty of care, summary judgment was appropriate because (after close of discovery) there was no evidence that Appellees had any notice that the children had been climbing on the sign or any reason to suspect that the sign was in any way dangerous or defective. Damien and his father ("Appellants") noted a timely appeal and present the following question:

[Did] the circuit court err[] by granting Appellees' motion for summary judgment and determining that Damien was a bare licensee and not an invitee when he played on the welcome sign on the grounds of the residence in which his grandparents resided?

We conclude, based on the material facts not in dispute in this case, that Damien was an invitee at the time he and his brother played on and around the community sign located in the common area of the condominium complex. Even allowing that Appellees owed Damien the highest duty as an invitee, we hold that the court decided correctly that Appellants failed to establish a *prima facie* case of negligence because the record reflects that Appellees did not have actual or constructive knowledge of any dangerous or defective condition, or that by the exercise of reasonable care, Appellees could have discovered the condition in time to warn Damien. Restatement (Second) of Torts § 343 (1965); *Hansberger v. Smith*, 229 Md. App. 1, 13, 21 (2016). Accordingly, we affirm the court's grant of summary judgment.

## BACKGROUND

The record evidence at summary judgment consisted primarily of the depositions of Damien and his parents, as well as some photographs of the community sign and surrounding area.[1] The following facts contained in the record were not disputed before the trial court.

---

[1] Appellees noted in their Memorandum in Support of their Motion for Summary Judgment that Plaintiffs produced Answers to Interrogatories and Responses to Requests for the Production of Documents, but these were not included in the materials submitted to the court with the motion for summary judgment or in response to that motion.

The Macias family made frequent visits to Waters House Condominium complex where Larry and Maria Ward, Damien's grandparents, have owned a unit in the complex since 2005. The condominium complex was, at the time of the incident, managed by Summit. The community sign faces an intersection and the area behind it is grassy and landscaped with several trees and bushes. There is no sign or fencing indicating that the community sign or the area around it is off limits to guests. A playground is located on the grounds on the side opposite of the grandparents' condominium from where the sign is located.

Damien's father, Damien M. Macias, did not accompany the family to the Wards' condominium on July 6 because he had to work. While playing outside that day, Damien and his brother Gabrial, who was age six at the time, climbed atop the community sign, a five-foot-tall stone wall in which the flat stone sign was embedded.[2] Damien stated during his deposition that he wanted to sit on top of the wall so that he could watch cars passing on the street. He grabbed onto the top of the ledge and climbed up the back of the

---

[2] References in this case to the stone "wall" and the stone "sign" are to the same five-foot-tall stone structure. During Damien's deposition defense counsel solicited the following agreement:

> Q. [Defendants' Counsel]. It's black lettering with a gray background. I'm going to call that the "sign." Okay? And do you see the stone around it, for example, in Exhibit No, 5—
> A. [Damien] Yeah.
> * * *
> Q. [Defendants' Counsel] I am going to call that the "wall." Okay. So I'm going to call the sign one thing and the wall as something else. All right?
> A. Okay.

In this opinion, when referring to the whole sign (in other words, the stone wall and the flat stone sign mounted into the wall), we have adopted Appellants' designation of "community sign," found in their briefing on appeal.

3

community sign. Gabrial followed and the two sat on top looking at cars for about 10 minutes before deciding that they wanted to go back inside. Gabrial was scared to jump off the wall, so Damien suggested that they climb down the front where there were more handholds and footholds available.

When Damien went to dismount, he grabbed onto the top of the flat stone sign that was attached to the stone wall. Gabrial followed almost immediately after. Damien was able to push Gabrial out of the way to prevent him from being injured before the sign fell on top of Damien. No adult was outside with the boys directly supervising them at the time of the accident. Their mother, Mrs. Leticia Macias, stated in her deposition that she was inside cooking, but that her mother was outside with Olivia gardening and her father could see the boys playing from inside the condominium by looking out of the bay window.

Mrs. Macias testified during her deposition that this was not the first time the boys had climbed on top of the community sign. She explained that their father had "frequently" sat the boys atop the wall to watch firetrucks pass by. She further testified that it was the habit of the boys to play outside in the area around the community sign because it was visible from the bay window inside the Ward's condominium.

When prompted, Mrs. Macias admitted that she had never seen any children other than her own climbing the sign. She also agreed that, prior to the accident, she did not know of any defect in the construction of the community sign and there was no visible indication that it could present a danger. Damien also admitted, during his deposition, that his first indication that the community sign was dangerous occurred as he was climbing down the front of it and the flat stone began falling on top of him. He acknowledged that

4

on previous ventures on and around the community sign, he had never heard any suspicious sounds or felt any movement that would suggest a problem. He also agreed that the community sign was in good shape visibly on the day of the accident.

Damien's father explained during his deposition that the community sign "looked secure and safe" and that is why he allowed his children to play on it. He admitted that no one from the Council or Summit had given the children permission to climb on the community sign. He stated that, to his knowledge, no one else had ever been injured by coming into contact with the community sign, and he had no knowledge of the flat stone sign falling out of its stone framework on any prior occasion.

**The Complaint**

On July 18, 2017, Appellants filed a two-count complaint in the Circuit Court for Montgomery County asserting negligence claims against the Council and Summit.[3] They charged that Appellees breached their duty owed to Damien, as an invitee on the premises of Waters House, by failing to inspect the community sign and failing to warn of any foreseeable dangers. They also alleged that the law imposed a "more stringent duty of care" on Appellees under the doctrine of attractive nuisance.[4]

---

[3] The complaint itself does not include a jury demand, though the civil cover sheet filed with the complaint shows the box checked for a jury trial.

[4] The circuit court observed correctly that Maryland does not recognize the attractive nuisance doctrine in cases involving children who are licensees or trespassers. *See Macke Laundry Service Co. v. Weber*, 267 Md. 426, 428 (1972). It appears, however, that Appellants abandoned their attractive nuisance argument at the summary judgment stage. We note that, although Maryland does not formally recognize the attractive nuisance doctrine, this does not relieve a landowner from the duty to consider, "in exercising

5

Appellees filed an answer generally denying liability and asserting that the complaint failed to state a claim upon which relief could be granted. They also asserted nine affirmative defenses, including assumption of the risk and contributory negligence.

## Motion for Summary Judgment

After the close of discovery, on April 6, 2018, Appellees filed a motion for summary judgment. Appellants filed an opposition, and the parties appeared in the circuit court for a hearing on June 19. In support of their motion, Appellees argued that Damien was a trespasser at the time he was injured because there was no invitation, express or implied, for Damien to climb the community sign. Appellees pointed out that neither Damien nor Mr. Macias testified that Appellees had in any way given Damien permission to play, or induced him to play, on the community sign. Relying on *Osterman v. Peters*, 260 Md. 313 (1971), *Barnes v. Housing Authority of Balt. City*, 231 Md. 147 (1963), and *Levine v. Miller*, 218 Md. 74 (1958), among other cases, Appellees averred they owed him no duty

---

reasonable care to make premises safe from any unreasonable risk of harm to his invitees, the capacity of children to understand dangers." *Pratt v. Maryland Farms Condo. Phase 1, Inc.*, 42 Md. App. 632, 639 (1979). More recently, in *Blackburn Ltd. P'ship v. Paul*, 438 Md. 100, 126-28 (2014), the Court of Appeals affirmed this Court's reversal of summary judgment in favor of the apartment complex owner, manager, and pool operator after a minor child nearly drowned in the complex swimming pool after gaining access through a gate that was faulty and failed to comply with a county ordinance and a State regulation. Judge Adkins, writing for a unanimous Court, recognized that under Maryland law "property owners owe no affirmative duty of care to trespassers[,]" yet "settled Maryland precedent acknowledges that, in some instances, the duty of care in a negligence action may arise from statute or regulation." *Id*. at 103. The Court held that if the Petitioners' alleged violation of the statute were proven, then it "would demonstrate the breach of a duty from Petitioners to [the child]" and that "[s]uch a duty, derived from statute, would apply irrespective of [the child's] legal status on the property when the incident occurred." *Id*. at 128.

except to refrain from "willful or wanton misconduct and entrapment." Furthermore, they contended that, even if Damien was an invitee, thereby imposing a higher duty of care on Appellees, there was no evidence produced during discovery that Appellees had notice of any dangerous condition. They asserted: "it is undisputed that no one else had ever been injured climbing [the] wall[,] . . . that the wall was not in poor or bad disrepair[,] . . . and that [Appellees] did not know that any children or any individuals had ever climbed on [the] wall before." Appellees highlighted that the record lacked any evidence that they had knowledge of a defect in the construction of the community sign or that they had knowledge that the Macias children sometimes climbed on it. Appellees noted that all three deponents testified that they, also, did not have any notice of any danger or risk associated with the sign. Finally, Appellees asserted that Damien was contributorily negligent, or, in the alternative, that he assumed the risk of injury when he climbed down the front wall holding onto the flat stone in the sign.

To the contrary, Appellants maintained that the community sign was located in the common area within the condominium complex and, therefore, Appellees had a duty to use reasonable care to ensure the sign was safe. Appellants analogized the duty of Appellees to that of a landlord, who has a duty to keep common areas safe, both for tenants and their guests. They argued that, because there were no warning signs or barriers to prevent climbing, there was an implied invitation for Damien to climb the community sign. They stressed that because Damien did not know of any risks associated with the community sign, he could not have been contributorily negligent, nor could he have assumed a risk

7

that was not known. Considering these "many areas of dispute," Appellants asserted that the case should be resolved by the trier of fact rather than on summary judgment.

The judge commenced his ruling from the bench in favor of Appellees, by observing that

> an 8-year-old-boy is going to explore and he's going to climb on things . . . [i]t would be hard for me to find that there's a duty on the part of the landlord to say, put up a sign. Children if you want to play, don't play here. You got to . . . expect 8-year-olds and 6-year-olds to read it, comprehend it and understand it. And that's why the parents are responsible.

But the judge also recognized, in commenting on the father's "passive approval" of the children climbing the sign, that it

> probably does appear harmless if there is only about a five foot [sic] and it's a wall … [i]t doesn't have barbed wire, doesn't seem to have any electrical wires coming out of it. There's no road going right by it. So, to a dad, you're not saying, oh, no, don't go near that sign because you could jump on it, it could fall and can hit you, kind of thing that's a very freak thing.

The judge then noted that the community sign was "not a designated climbing area. [] [N]o one's inviting children to play there. It's basically just advertising the complex." Accordingly, the judge announced that he would treat Damien as a bare licensee because he was on the community sign without the owner's consent. He steered away from calling Damien a "trespasser, which is a little harsh for a little guy[,]" but noted that he understood the legal distinction "when you go from an authorized area to one that you're not authorized [sic]." Given that the only duty owed to a licensee or trespasser is to "refrain from willful injury or entrapment," the court found that there was "no indication that [] there was any willful injury or entrapment."

8

The judge continued, however, by ruling that, *even if* Damien were "a social guest or licensee by invitation," there was no evidence in the record to support a finding that Appellees had knowledge or reason to know of "an unsafe condition or [that] anybody might get hurt there." With no evidence that Appellees knew or should have known of any potential danger, the court ruled that Appellees did not breach the duty to exercise reasonable care to make the premises safe or warn guests of a known danger. The judge reasoned:

> There was no reported history of anybody else getting hurt. There was nothing visible, [no] nail sticking out, or anything like that that would put the owner on notice that it was a situation where someone could fall or get hurt or that the sign might give way if you jump on it. There was no indication that children traditionally jumped and played on that sign and swung on it. There was no indication [in] the record that there was any reason to believe that it was a dangerous situation.

The judge observed that "It was a freak thing that happened and nobody, maybe even if you were a little older, would you think, you would appreciate that risk." He stated that he was not prepared to find that Damien, as an eight-year-old child, assumed the risk or that he was contributorily negligent as there was nothing in the record to show the community sign might pose a danger to anyone. The judge observed, "[y]ou know you get to those areas if, in fact, there's negligence." In conclusion, the court ruled: "I find that there was no genuine dispute of any material[] facts. And I find as a matter of law, there was no duty on the part of the landlord to do any more than what was done there." This appeal timely followed.

## DISCUSSION

## I.

## A. Standard of Review

We review the circuit court's grant of summary judgment without deference. *Koste v. Town of Oxford*, 431 Md. 14, 25 (2013) (quoting *D'Aoust v. Diamond*, 424 Md. 549, 574 (2012)). Maryland Rule 2-501(f) provides that a circuit court shall enter summary judgment in favor of the moving party "if the motion and response show that there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Thus, we must first ascertain, independently, whether a dispute of material fact exists in the record on appeal. *Hill v. Knapp*, 396 Md. 700, 711 (2007); *Richardson v. Nwadiuko*, 184 Md. App. 481, 488 (2009). "[O]nly where such dispute is absent will we proceed to review determinations of law[,]" and then we will "construe the facts properly before the court, and any reasonable inferences that may be drawn from them, in the light most favorable to the non-moving party." *Remsburg v. Montgomery*, 376 Md. 568, 579–80 (2003) (citations omitted). When analyzing the decision of the circuit court, we consider only the grounds for granting summary judgment relied upon by the court. *Landaverde v. Navarro*, 238 Md. App. 224, 241, *cert. denied sub nom., Parrish Servs. v. Landaverde*, 461 Md. 502 (2018); *Deboy v. City of Crisfield*, 167 Md. App. 548, 554 (2006).

Maryland premises-liability law allows disposition on summary judgment when the pertinent historical facts are not in dispute. *See, e.g.*, *Hansberger*, 229 Md. App. at 13, 21-24 (affirming a grant of summary judgment in favor of possessor of farm based on lack of any knowledge of late-night field party on the farm); *Richardson*, 184 Md. App. at 483-84

10

(affirming a grant of summary judgment in favor of defendants where, although the lower court erred in concluding that patient was a bare licensee, the court determined correctly that plaintiffs failed to establish a prima facie showing of negligence); *see also Barnes*, 231 Md. at 152-53 (affirming a directed verdict in favor of defendant on the issue of whether plaintiff was a trespasser or an invitee and instructing that when it is manifest that, "on the plaintiff's own showing and the uncontradicted evidence in the case, there is no rational ground on which a verdict for the plaintiff can be based, the court has the duty, on a proper motion by the defendant, to direct a verdict for him" (citing *Landay v. Cohn*, 220 Md. 24 (1959); *Levine*, 218 Md. 74)); *but see Sutton-Witherspoon v. S.A.F.E. Management, Inc.*, 240 Md. App. 214, 218 (2019) (holding that circuit court erred in granting summary judgments in premises-liability case by failing to address plaintiffs' alternative theory of negligence set out in complaint).[5]

---

[5] For other premises-liability cases decided on summary judgment, *see, e.g.*, *Joseph v. Bozzuto Mgmt., Co.,* 173 Md. App. 305, 319 (2007) (affirming grant of summary judgment in slip-and-fall case in which plaintiff proffered no evidence to show that apartment building owner and Housing Opportunities Commission had actual or constructive knowledge of a dangerous condition); *Deboy*, 167 Md. App. at 553 (affirming grant of summary judgment in favor of defendants based on court's determination that plaintiff was a bare licensee, rather than an invitee, and defendants did not owe her a duty to make the premises reasonably safe); *Wells v. Polland*, 120 Md. App. 699, 703 (1998) (holding that circuit court found correctly that plaintiffs were trespassers rather than invitees and affirming grant of summary judgment for defendants); *Doehring v. Wagner*, 80 Md. App. 237, 244-46 (1989) (affirming a grant of summary judgment in favor of defendants because the decedent was a trespasser, not an invitee, when he "intentionally and without consent" entered the property of another); *Kirby v. Hylton*, 51 Md. App. 365, 371, 377-78 (1982) (affirming a directed verdict for defendants in part because it was "abundantly clear that" the decedent was a trespasser and appellees simply had no duty "except [to] not [] entrap him or willfully injure him").

Before we can set aside the trial court's ruling granting summary judgment in favor of Appellees, Appellants must show either that there was a material fact in dispute involving one of the elements of negligence, or that Appellees were not entitled to judgment as a matter of law. *Wells v. Polland*, 120 Md. App. 699, 709 (1997).

## II.

## Negligence

## A. No Material Facts in Dispute

Appellants contend that "there exists . . . a genuine issue of material fact—as to whether or not Damien was an invitee while playing on the community welcome sign of his grandparents' condominium complex." This generalized contention, without more, does not meet the requirements of Maryland Rule 2-501(f) and Maryland decisional law.

A material fact is one that, "depending on how it is decided by the trier of fact, will affect the outcome of the case." *Warsham v. James Muscatello, Inc.*, 189 Md. App. 620, 634 (2009) (citations omitted). The burden is on the party opposing a motion for summary judgment to "show disputed material facts with precision in order to prevent the entry of summary judgment." *Id.* (citation omitted).

The status of an entrant, and the legal duty owed thereto, are questions of law informed by the historical facts of the case. *See Troxel v. Iguana Cantina, LLC*, 201 Md. App. 476, 495 (2011) (citing *Corinaldi v. Columbia Courtyard, Inc.*, 162 Md. App. 207, 218 (2005)); *see also* Restatement (Third) of Torts: Liab. for Phys. & Emot. Harm § 50, cmt. e (2012) ("If there is no dispute about the relevant historical facts, the status of an entrant as a trespasser is decided by the court."). The material facts in this case, set out

12

above, are not in dispute. Indeed, Appellants have not pointed us to a single disputed *material fact* but, rather, state generally that Damien's legal status is in dispute. *Cf. Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. 470, 488 (1995) ("Mere formal denials or general allegations of a dispute are not sufficient to establish the dispute."). Appellants cannot set material facts into dispute simply by raising a question of law.

We hold that the circuit court found correctly that there were no material facts in contention as to whether plaintiffs/Appellants had established a *prima facie* case of negligence by offering "proof of some duty, a breach of that duty, proximate causation, and damages." *Wells*, 120 Md. App. at 709. We turn, therefore, to the question of whether the court was legally correct.

### B. General Principles of Premises Liability

A brief overview of Maryland premises-liability law is necessary to place our analysis in proper context. Premises liability is based on common-law principles of negligence, *see Troxel*, 201 Md. App. at 493, so a plaintiff must establish the four elements required in any negligence action:

> (1) that the defendant was under a duty to protect the plaintiff from injury, (2) *that the defendant breached that duty*, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty.

*Joseph v. Bozzuto Mgmt., Co.*, 173 Md. App. 305, 314 (2007) (emphasis in original) (internal quotations and citations omitted). The burden is on the plaintiff to prove each of these elements. *Pratt v. Maryland Farms Condo. Phase 1, Inc.*, 42 Md. App. 632, 640 (1979) ("[I]f the plaintiff does not, in the first instance, introduce evidence on each element

13

which is sufficient to warrant a finding in his favor, he will lose his case at the hands of the court (by nonsuit, directed verdict, or the like).").

Although grounded in common-law principles, the analysis we must undertake in premises-liability cases is distinct from other classes of negligence at the outset because the duty owed by the possessor or owner of property to a person injured on the property is determined by the entrant's legal status at the time of the incident.[6]  *See Sutton-Witherspoon,* 240 Md. App. at 234 (citing *Richardson*, 184 Md. App. at 489); *see also Bozzuto Mgmt.,* 173 Md. App. at 309 (discussing the distinction between lead-paint and slip-and-fall negligence cases, noting "[t]he respective types of cases are of the same genus, perhaps, but they are very different species.").  We apply the general common-law classifications of invitee, social guest (or licensee by invitation), and trespasser (or bare licensee).  *See Howard Cty. Bd. of Educ. v. Cheyne*, 99 Md. App. 150, 155 (1994).  As we discuss in greater detail below, these classifications have their own subclasses but, in general, the highest duty is owed to invitees; namely, the duty to "use reasonable and ordinary care to keep the premises safe for the invitee and to protect the invitee from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for the invitee's own safety will not discover." *Deboy*, 167 Md. App. at 555 (citation and brackets

---

[6] As reflected in the Maryland Civil Pattern Jury Instructions, there are four categories of entrant: 1) invitee, 2) licensee, 3) bare licensee, and 4) trespasser.  Maryland Pattern Jury Instructions—Civil ("MPJI-Cv") 24:2 DEFINITIONS (2019).  However, because landowners owe the same duty to bare licensees that they owe to trespassers, *Macke Laundry Serv. Co. v. Weber*, 267 Md. 426, 428-29 (1972) (citing *Crown Cork & Seal Co. v. Kane*, 213 Md. 152, 157 (1957)), property owners are only held accountable under three levels of duty.

omitted). At the bottom rung are trespassers and bare licensees, to whom is owed no more than to "abstain from willful or wanton misconduct or entrapment." *Id.*

A breach occurs when a party fails to discharge the duty owed. *Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.*, 335 Md. 135, 147-48 (1994). A property owner will be liable to an invitee in negligence if (1) the owner "controlled the dangerous or defective condition;" (2) the owner knew or should have known of the dangerous or defective condition; and (3) "the harm suffered was a foreseeable result of that condition." *Hansberger*, 229 Md. App. at 21 (citation omitted). To establish a breach of duty, the plaintiff carries the burden to show that the defendant had actual or constructive knowledge of the dangerous condition and "that th[e] knowledge was gained in sufficient time to give [the defendant] the opportunity to remove it or to warn the invitee." *Rehn v. Westfield America*, 153 Md. App. 586, 593 (2003) (citation omitted).

The legally cognizable relationship between the breach of duty and the harm is also referred to as proximate cause. *Manor Inn of Bethesda*, 335 Md. at 156. "[T]o be a proximate cause of an injury, 'the negligence must be 1) a cause in fact, and 2) a legally cognizable cause.'" *Id.* at 156 (citation omitted). "Causation-in-fact concerns the threshold inquiry of whether a defendant's conduct actually produced an injury." *Troxel*, 201 Md. App. at 504 (citation omitted). "Once causation-in-fact is established, 'the proximate cause inquiry turns to whether the defendant's negligent actions constitute a legally cognizable cause of the complainant's injuries.'" *Id.* at 505 (citation omitted). This determination requires an analysis of whether the harm that occurred was a foreseeable result of any

15

negligent conduct, if established. *See id.* Proximate cause is ordinarily a question for the trier of fact, unless only one possible inference may be drawn from the facts of a case. *Id.*

It is important to underscore that foreseeability—the principal consideration in actionable negligence—is not confined to the proximate cause analysis. *See Kennedy Krieger Institute, Inc. v. Partlow*, 460 Md. 607, 633-34 (2018) (explaining that foreseeability is the principal determinant of common-law duty in personal injury cases). The role that foreseeability plays as a limitation on duty was explained by Judge McAuliffe writing for the Court of Appeals in *Henley v. Prince George's County*:

> And at least since 1928 when [Chief] Judge Cardozo wrote *Palsgraf v. Long Island R. Co.,* 248 N.Y. 339, 162 N.E. 99 (1928), courts have given further effect to the social policy of limitation of liability for remote consequences by narrowing the concept of duty to embrace only those persons or classes of persons to whom harm of some type might reasonably have been foreseen as a result of the particular tortious conduct. In *Prosser and Keeton on The Law of Torts* § 53 (W. Keeton 5th ed. 1984) the authors conclude that the limitation of causation by the use of the modifier "proximate" and the limitation of duty by the requirement of foreseeability are fundamentally similar.

305 Md. 320, 333-34 (1986). We also discussed the superimposing function of foreseeability in *Valentine v. On Target, Inc*.:

> Although in many cases there is little or no overlap between the four elements, in some instances the same considerations that relate to or define the element of duty may also relate to or define the element of causation. The element common to both duty and causation is that of foreseeability. Prosser and Keeton speak to the problem at 274–75.

112 Md. App. 679, 683-84 (1996), *aff'd*, 353 Md. 544 (1999) (citing W. PAGE KEETON ET AL., PROSSER AND KEETON ON TORTS, § 42, at 274-75 (5th ed. 1984)). The Court of Appeals has cautioned, on the other hand, that "'foreseeability' must not be confused with

'duty'. The fact that a result may be foreseeable does not itself impose a duty in negligence terms." *Ashburn v. Anne Arundel Cty.*, 306 Md. 617, 628 (1986).

Appellants' sole contention on appeal is that the circuit court erred when it determined that eight-year-old Damien was a bare licensee, and not an invitee. Appellants aver, "[t]his case turns on a determination of Damien's legal status when he played on the community sign located on the grounds of the condominium complex in which his grandparents resided."

Appellees counter that regardless of the duty owed, Appellants failed to introduce any evidence of negligence on the part of the Council or Summit. They contend that the court's decision rested on its determination that there was no evidence that Appellees had actual or constructive knowledge of a dangerous condition, or that they had any opportunity to correct the danger or to warn Damien.[7]

Accordingly, we confine our analysis to only two issues—legal status and notice.

---

[7] Appellees submit that if we find error in the circuit court's determinations, then we should still affirm the order granting summary judgment based on Damien's contributory negligence. The circuit court determined that it was not necessary to reach the issues of contributory negligence and assumption of risk because the court found that there was no negligence. The court was correct in its determination. *See e.g. Morris v. Williams*, 258 Md. 625, 628 (1970) ("We need not consider the suggestion of the trial court that the eight year old plaintiff may well be guilty of contributory negligence in light of our conclusion that no primary negligence has been shown to exist.")

In their brief, Appellees also assert that "[i]t was error [for the circuit court] not to rule on the superseding/intervening negligence of [Mrs. Macias]." We will not address this issue either, not only because there was no evidence of negligence, but also because we are generally "confined to the bases relied on by the court, and will not affirm the grant of summary judgment for a reason not relied on by the circuit court." *Deboy*, 167 Md. App. at 554 (citation omitted).

## C. Legal Status

### 1. Parties' Contentions

Appellants contend that Damien was an invitee when he was playing on the common grounds of the condominium complex, and that that status was conferred on him as a guest of his grandparents, who had the status of business invitees. They assert there was no basis to find that Damien's status changed to that of a bare licensee while playing in the area around the community sign. They note that "[i]nvitee status can be established by implied invitation[,]" and that an implied invitation existed because Damien frequently played on the grounds, the community sign blended in with the grounds, and there was no indication that the community sign was not to be climbed or sat upon. They contend that it would be reasonable for Appellees to anticipate that children would play "in, around, and on the sign."

Conversely, Appellees claim that Damien's grandparents were not business invitees, and, thus Damien cannot "borrow" business invitee status from them. When Damien first arrived, Appellees say, his status at his grandparents' condominium was that of social guest because his primary reason for being on the property was to visit and eat dinner with his grandparents. Appellees submit that they were only required to warn Damien of known dangers, of which there were none. Further, Appellees contend that although Damien was a social guest, or licensee by invitation, he lost that status and became a trespasser or bare licensee when he climbed the community sign. Consequently, Appellees request that this Court affirm the circuit court's finding that Damien was a bare licensee at the time that he climbed the community sign.

18

## 2. Three Tiers of Duty

A trespasser is one who intentionally enters the property of another without "privilege or consent[.]" *Wells*, 120 Md. App. at 710. And a bare licensee, "like a trespasser, takes the property as he finds it and is owed no duty greater than that owed the trespasser." *Macke Laundry Serv. Co. v. Weber*, 267 Md. 426, 428-29 (1972) (citing *Crown Cork & Seal Co. v. Kane*, 213 Md. 152, 157 (1957)). As we have already explained, a landowner generally owes no duty to a trespasser under Maryland law, even a young child, "except to abstain from willful or wanton misconduct or entrapment." *Wells*, 120 Md. App. at 710*; Levine*, 218 Md. at 79 (citation omitted). The anachronistic characteristics of this rule have been tempered by statute and recent cases. *See e.g. Baltimore Gas & Elec. Co. v. Flippo*, 348 Md. 680 (1998); note 4, *supra* (discussing the holding in *Blackburn Ltd. P'ship*, 438 Md. at 128, that regardless of a child's legal status, a duty of care in a negligence action may arise from statute or regulation).

A tier above trespasser is a social guest, sometimes referred to as a licensee by invitation. *Laser v. Wilson*, 58 Md. App. 434, 441 (1984). The social guest "takes the premises as his host uses them[,]" and the host must "exercise reasonable care to make the premises safe for his guest or he must warn him of known dangerous conditions that cannot reasonably be discovered . . . by the guest." *Bramble v. Thompson*, 264 Md. 518, 521-22 (1972). Maryland's seminal case on social host liability is *Paquin v. McGinnis*, in which Mrs. Paquin slipped on a "scatter rug" and fell while she was a houseguest of the McGinnis family. 246 Md. 569, 570 (1967). In affirming the circuit court's directed verdict in favor of the defendants, the Court of Appeals embraced the Restatement (Second)'s approach,

19

which imposes liability for harm caused by a dangerous condition on the premises only if three conditions are met. *Id.* at 572 (adopting Restatement (Second) of Torts § 342 (1965)). First, the host must "know[] or ha[ve] reason to know of the condition and should realize that it involves an unreasonable risk of harm" to the licensees, expecting that they will not discover or realize the danger. *Id.* Second, the host must fail "to exercise reasonable care to make the condition safe, or to warn the [licensees] of the condition and the risk involved[.]" *Id.* And third, the licensees must "not know or have reason to know of the condition and the risk involved." *Id.*

The highest duty is owed to an invitee. An invitee is "invited or permitted to enter or remain on another's property for purposes connected with or related to the owner's business." *Bramble*, 264 Md. at 521. Just like the social guest, an invitee has an invitation to use the landowner's premises, but an invitee is "entitled to expect that [her] host will make far greater preparation to secure the safety of his patrons than a householder will make for his social or even his business visitors." *See Moore v. Am. Stores Co.*, 169 Md. 541, 547 (1936) (citation and internal quotation marks omitted). A property owner does not owe a social guest a duty to "inspect the land to discover possible or even probable dangers," Restatement (Second) of Torts § 342, cmt. d. (1965); whereas, a property owner must use reasonable care to inspect and make the premises safe for invitees. *Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md. App. 381, 388 (1997). Still, an invitee plaintiff must show that the landowner had actual knowledge of the defect or "by the exercise of reasonable care would discover the condition." Restatement (Second) of Torts §, 343 (1965); *Deering Woods Condo. Ass'n v. Spoon*, 377 Md. 250, 264–65 (2003)

20

(explaining that the duty to inspect is a function of the property owner's knowledge of the defect).

An entrant may establish invitee status under two theories: (1) mutual benefit or (2) implied invitation. *Kane*, 213 Md. at 159-60; *Richardson*, 184 Md. at 489; *Wells*, 120 Md. App. at 710; *Cheyne*, 99 Md. App. at 155. The mutual benefit theory generally applies to a person who has entered a retail or commercial establishment for a purpose related to the business of the property owner. *Austin v. Buettner*, 211 Md. 61, 66-67 (1956). The primary focus is whether the entrant subjectively intended to benefit the property owner in some way. *Cheyne*, 99 Md. App. at 155.

Quite the opposite, "the theory of implied invitation is objective and does not rely on any mutual benefit." *Wells*, 120 Md. App. at 710-11 (citing *Cheyne*, 99 Md. App. at 156); *see also Kane*, 213 Md. at 159. To determine whether a premises owner has extended an implied invitation, courts look to the circumstances "such as custom, habitual acquiescence of the owner, the apparent holding out of the premises for a particular use by the public, or the general arrangement or design of the premises." *Deboy*, 167 Md. App. at 555 (citation omitted). In *Wells*, for example, plaintiffs who saw a for-sale sign on a beach house were injured as they descended the exterior wooden staircase of the house and it collapsed underneath of them. 120 Md. App. at 704-06. We concluded that the implied invitation doctrine did not apply because, at the time of the collapse, there was yellow plastic caution tape wrapped around the handrail of the staircase and an "occupancy prohibited sign on the house." *Id.* at 707.

21

On the other hand, in *Kane*, the Court of Appeals determined that the underlying facts supported the plaintiff's implied invitation claim. 213 Md. at 162. In that case, a truck driver's helper arrived at the defendant's warehouse and was told by a warehouse employee that he was going to have to wait a while before his truck could be loaded. *Id.* at 156. In the past, he had used a smoking room on the property while he waited, and he did so again on this occasion. *Id.* As he returned to the warehouse after smoking, he was struck and injured by a forklift. *Id.* The warehouse owner argued that the helper did not have permission to use the smoking room and was at most a bare licensee. *Id.* The Court determined that "there was evidence to support an implied invitation" where the room in question was "set aside for smoking, [] its location was made known to the plaintiff [] on two occasions, [] this fact was known to the foreman and the other employees" and there was no "notice to the plaintiff that [the room] was intended solely for employees[.]" *Id.* at 162. The implied invitation theory has also been extended to encompass persons accompanying those to whom an express invitation was extended. *Richardson*, 184 Md. App. at 491-92 (holding that a spouse who accompanied the other spouse to a doctor's appointment was also an office invitee where no one had ever informed either spouse otherwise).

As we discuss in further detail below, an entrant's legal status is not static and may change through the passage of time or through a change in location. *See Levine*, 218 Md. at 78-79. ("One may be an invitee or business visitor as to one portion of the premises . . . and be a licensee or trespasser as to another portion of the same premises."). In other

22

words, an entrant can lose invitee status if he or she remains on the premises beyond a specified time or enters an area that is off limits to guests and the general public.

### 3. Condominiums

We have found no reported decisions in Maryland that squarely define the duty owed by a condominium association to condominium owners and their guests in the common areas of a condominium complex.[8] Our sister states that have had the opportunity to reach this issue have largely decided that the duty owed by a condominium association to condominium owners utilizing common areas is the same as the common-law duty owed by a landlord or possessor of land to an invitee. *See, e.g.*, *Ritter & Ritter, Inc. v. Churchill Condo. Ass'n*, 82 Cal. Rptr. 3d. 389, 401 (Cal. Ct. App. 2008); *Sevigny v. Dibble Hollow Condo. Ass'n, Inc.*, 819 A.2d 844, 854 (Conn. App. Ct. 2003); *Sacker v. Perry Realty Services, Inc.*, 457 S.E.2d 208, 210 (Ga. Ct. App. 1995). That is, the condominium

---

[8] In *Deering Woods Condominium Association v. Spoon*, the plaintiff sued the condominium where she resided, its management company, and the owner of adjoining land where the accident occurred after she fell on an icy sidewalk. 377 Md. 250, 254 (2003). The trial court granted the condominium's motion for summary judgment for waiver of claim by Ms. Spoon based upon a provision in the condominium's bylaws, but also ruled in favor of all three defendants on lack of constructive notice. *Id.* at 258, 260. In the Court of Appeals, the claims against the condominium association and the management company were resolved based on a lack of notice of the dangerous condition that resulted in injury to the plaintiff, without a discussion of the duty owed. *Id.* at 273. Pertinently, and contrary to the underlying case, the condominium association in *Deering Woods* did not own the land where the Plaintiff was hurt, so liability would have been premised on its status as an abutting landowner. *Id.*

Another case, *Pratt v. Maryland Farms Condominium Phase 1, Inc.*, involved a minor child who climbed a tree located on the property of a condominium complex and came into contact with an uninsulated electrical wire. 42 Md. App. 632, 633 (1979). This Court did not examine the question of what duty the condominium owed the child because all parties conceded that the child was on the property as an invitee. *Id.* at 637.

association owes to invitees the duty "to reasonably inspect and maintain the premises in order to render them reasonably safe." *Sevigny*, 819 A.2d at 854 (citation omitted); *Martinez v. Woodmar IV Condos. Homeowners Ass'n, Inc.*, 941 P.2d 218, 221 (1997) (en banc) (the Supreme Court of Arizona holding that "with respect to common areas under its exclusive control, a condominium association has the same duties as a landlord[]" to "'exercise reasonable care to inspect and repair [the common areas] of the premises for the protection of the lessee'"); *see generally* 15B Am. Jur. 2d Condominiums, Etc. §§ 30, 52 (2019 ed.) (discussing the duty of condominium associations to maintain common elements on the property and the duty owed by condominium associations to unit owners and their guests in various jurisdictions).

Connecticut, for example, has applied the landlord's standard of care to a condominium association because, like a landlord, the association assumes responsibility for care and maintenance of common areas. *Sevigny*, 819 A.2d at 855-56. Similarly, the California Court of Appeal has held that a condominium association's duty of care is the same as that owed by a landlord to his or her tenants. *Ritter*, 82 Cal. Rptr. 3d. at 400-01. The court reasoned that unlike the association that is charged with management of the common areas, members of an unincorporated association, such as a condominium association, have no "effective control over the operation of the common areas." *Ritter*, 82 Cal. Rptr. 3d. at 401. The condominium association, in maintaining control of the common areas as a landlord does, must exercise due care for the residents' safety in those areas. *Id.* In Georgia, the Court of Appeals addressed the issue when a condominium owner brought suit against her condominium association after she tripped on an out-of-

24

place railroad tie in the dimly lit parking lot of the complex. *Sacker,* 457 S.E.2d at 210. The Court decided that the mutuality of obligations and interests between a condominium association and a unit owner afford the unit owner the status of invitee in the common areas of the complex. *Id.* Therefore, a condominium association had a "duty to exercise ordinary care to protect [unit owners] from unreasonable risks of which it had superior knowledge" and "afford [them] premises that are reasonably safe[.]" *Id.*

We agree with the opinions of these states and conclude that the landlord-tenant paradigm is the most fitting in cases involving the common areas of a condominium complex. The Maryland Court of Appeals has continually endorsed the rationale that landlord liability for injuries in the common areas is grounded upon the control that the landlord retains over the area and is not premised on any pecuniary benefit exchanged between the parties. *See, e.g.*, *Macke Laundry Serv. Co. v. Weber,* 267 Md. 426, 431 (1972) ("Our decisions have consistently held a landlord liable for improper maintenance of facilities or for failure to remedy defects in equipment over which he retains control[.]"). In *Shields v. Wagman*, for instance, the Court of Appeals noted that the landlord's duty with respect to common areas stems "from the responsibility engendered in the landlord by his having extended an invitation, express or implied, to use the portion of the property retained by him." 350 Md. 666, 674 (1998) (citation omitted). In that case, a tenant and a business invitee were injured by another tenant's pit bull terrier while utilizing the parking lot and sidewalks on the premises. *Id.* at 670-71. The Court stated that the locations where plaintiffs were injured were within the common area that tenants and their business invitees were meant to use, and that the landlord maintained control of those areas. *See id.* at 673,

25

681. Similarly, in *Sezzin v. Stark*, a tenant fell through the glass floor of an air and light shaft and sustained injuries. 187 Md. 241 (1946). The Court of Appeals found that a landlord who provided the shaft for use by tenants and maintained control of the shaft should have anticipated the dangers inherent in the shaft's design and exercised a high degree of care for his tenant's safety in maintaining it. *Id*. at 249-50.

We hold that condominium owners and their guests occupy the legal status of invitee when they are in the common areas of the complex over which the condominium association maintains control. Barring any agreements or waivers to the contrary,[9] the condominium association is bound to exercise "reasonable and ordinary care" to keep the premises safe for the invitee and to "protect the invitee from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for his [or her] own safety, will not discover." *See Bramble*, 264 Md. at 521. The burden is still on the plaintiff to show that the condominium association (and/or property management company) had notice of any dangerous condition or could have discovered such dangerous condition through the

---

[9] "It is well settled in [Maryland], consistent with 'the public policy of freedom of contract,' that exculpatory contractual clauses generally are valid." *Adloo v. H.T. Brown Real Estate, Inc.*, 344 Md. 254, 259 (1996) (internal citation omitted). Although such exculpatory clauses are narrowly construed, in some instances, courts have found that an exculpatory clause in a condominium agreement can preclude liability in a negligence action against a condominium association. *See Cornell v. Council of Unit Owners Hawaiian Vill. Condos., Inc.*, 983 F. Supp. 640, 645 (D. Md. 1997) ("In short, the Court finds under Maryland law that the exculpatory clause at issue in this case unambiguously releases the Council from liability for its own negligence."). A landlord, however, is barred by statute from including in leases exculpatory clauses that exempt the landlord from liability for harm that occurs in areas that the landlord controls. Maryland Code (1974, 2015 Repl. Vol.), Real Property Article ("RP"), § 8-105; *see also Prince Philip P'ship v. Cutlip*, 321 Md. 296, 304 (1990). There is no allegation of waiver in this case.

exercise of ordinary care. *Moore*, 169 Md. at 541. Our holding is consistent with the principles long recognized in Maryland landlord and tenant cases, where it is the control over the common areas, and not necessarily the business interest at stake, that gives rise to a duty. *Rivas v. Oxon Hill Joint Venture*, 130 Md. App. 101, 112 (2000); *Shields*, 350 Md. at 674; *see also Sezzin*, 187 Md. at 249-50.

#### 4. Damien's Legal Status on the Condominium Common Grounds

Applying the foregoing precepts, we conclude that Damien held the legal status of invitee while he was playing on the common grounds of the Waters House Condominium complex. Appellees argue to the contrary, claiming that Damien's grandparents were not on the property in furtherance of Appellee's business, but instead as partial property owners. Because the grandparents were not invitees, Appellees insist, they could not confer invitee status on their guests. We are not persuaded.

While Damien's grandparents do have a property interest in the common areas of the condominium complex, there was no evidence produced that they have any control over the condition or maintenance of the area where the community sign is located. *See Macke,* 267 Md. at 431; *see also La Belle Epoque, LLC v. Old Europe Antique Manor*, LLC, 406 Md. 194, 218 (2008). In fact, Appellees never alleged that Damien's grandparents had any control over the area, and admit, instead, that Appellees "had obligations with respect to the maintenance and upkeep of common areas[.]" [10]

---

[10] Neither the provisions of the Wards' condominium agreement nor any condominium bylaws were at issue in this case, but it is notable that the Maryland Condominium Act similarly charges Appellees with responsibility for the common areas. The Act provides, "Except to the extent otherwise provided by the declaration or bylaws

27

Our holding that Damien was an invitee on the common grounds of the condominium complex does not conclude our analysis because, as we mentioned already, an entrant's legal status is not static and may change through the passage of time or through a change in location. *See Levine*, 218 Md. at 78-79.

Appellees contend that Damien's legal status changed to that of a trespasser when he climbed the community sign. They assert, "Nothing about the [community] sign or the wall, as admitted by [Damien] and his parents, suggested, implied, or otherwise induced the general public or [Damien] in particular, into thinking that the [community] sign was something upon which children were allowed to climb, hang and/or play." According to Appellees, when Damien climbed the community sign he could not meet the criteria to qualify as an invitee under either the "mutual benefit" theory—since he did not intend to benefit Appellees when he chose to play on the sign—or the "implied invitation" theory— since he could not prove that the community sign was an object upon which children were induced to play.

Appellees rely mainly on three senescent cases involving minor children: *Barnes v. Housing Authority of Baltimore City*, 231 Md. 147 (1963); *Levine v. Miller*, 218 Md. 74 (1958); and *Pellicot v. Keene*, 181 Md. 135, 139 (1942). In *Pellicot*, a six-year-old boy, who had accompanied his mother to the grocery store, wandered into a passageway, used by the proprietor and located behind a counter and display rack, where he fell through an

. . . the council of unit owners is responsible for maintenance, repair, and replacement of the common elements, and each unit owner is responsible for maintenance, repair, and replacement of his unit." RP § 11-108.1.

open trap door and injured himself. 181 Md. at 136. The Court of Appeals framed the controlling question as whether the storekeeper invited the child behind the counter. *Id.* at 137. "If he did [invite the child behind the counter] it was his duty to the child to use due care and caution to keep the aisle behind the counter in such a condition as to prevent the child . . . from harm." *Id.* The Court held that because customers were not invited to go behind the store's counters or display racks, the child was "at best" a "mere licensee[] to whom the storekeeper owe[d] no duty for [his] protection." *Id.* at 139.

Similarly, in *Levine*, the Court of Appeals held that a 10-year-old girl, who had permission to use the recreation room in an apartment complex for a prescribed period, became a trespasser or bare licensee when she returned to the room after the scope of permission had expired. 218 Md. at 78-79. The girl returned the room key to the landlord at the agreed upon time but left the recreation room door unlocked so that she could return later. *Id.* at 76. Upon returning to the room, the girl sustained an injury when an unattached radiator fell on her. *Id.* The Court noted that the evidence "suggest[ed] the finding that the radiator was placed in the room by [an] engineer of the landlords when the room was not in use or supposed to be in use." *Id.* In support of its holding, the Court reasoned that, because the "room was always locked except when it was opened with the permission of the landlords," it was "in a different category from public portions of a building retained under the control of the landlord which the tenants use as a matter of express or necessarily implied right." *Id.* at 78. Because the girl returned to the room when she was no longer permitted to use it, the landlord had no duty to use reasonable care after the scope of permission had expired. *Id.*

29

In *Barnes*, the Court of Appeals held that a toddler became a trespasser the moment he stepped off a paved walkway and onto the unpaved area adjacent to the walkway. 231 Md. at 152. In that case, the three-year-old boy, and resident of the Frederick Douglas Homes housing project, was walking unaccompanied from the community playground back to his parents' apartment. *Id.* at 150. At some point during his walk, he strayed from the paved walkway and fell into a concrete window well located about eighteen inches from the walkway. *Id.* The Court reasoned that because the landlord made no invitation, express or implied, for anyone to use the area adjacent to the walkway, persons using that area ceased to be invitees. *Id.* at 152.

More recently, and by way of contrast, in *Flippo*, the Court of Appeals affirmed a jury verdict finding that Baltimore Gas and Electric Company (BGE) had a duty to trim trees located on private property where it was reasonably foreseeable that children might climb. *Baltimore Gas and Elec. Co. v. Flippo*, 348 Md. 680, 701-02 (1998). In that case, a child climbed a tree that was located on private property over which BGE had an easement to run power lines. *Id.* at 702. The child's foot slipped and, reaching out, he came into contact with an electric wire and was severely injured. *Id.* at 687. Evidence was presented that BGE classified certain trees as "*climbable,*" and that "children had a tendency to climb the trees in th[at] neighborhood, including the tree involved in th[e] case." *Id.* at 702 (emphasis added). The Court of Appeals went through a detailed analysis that concluded with a determination that the minor plaintiff was a licensee by invitation while climbing the tree. *Id.* at 689. The Court noted that there is a distinction between cases where "the appliances causing the injury were so placed as to be dangerous to persons

30

who might be reasonably expected to come into close proximity to them while occupying adjacent premises or positions[]" and cases where "the injury occurred at a place intended for exclusive possession by [the defendant][.]" *Id.* at 698. The Court held that there was sufficient evidence for a jury to conclude that "BGE could have reasonably foreseen that a child may have been injured as a result of its failure to trim the tree that Flippo was climbing[.]" *Id.* at 702.

In another similar case, a minor child and his father brought suit against Potomac Electric Power Company (Pepco) and Maryland Farms Condominium, Phase 1, Inc. (Maryland Farms), after the minor child "climbed a pine tree and came in contact with an uninsulated electrical wire." *Pratt*, 42 Md. App. at 633. The tree and the electrical wire were located on the property of the Maryland Farms condominium complex where the child lived with his parents. *Id.* The plaintiffs settled with Pepco and received a jury verdict in their favor after a trial with respect to Maryland Farms. *Id.* The trial court entered judgment notwithstanding the verdict; on appeal, our predecessors reversed and reinstated the jury verdict in plaintiffs' favor. *Id.* at 642. It was assumed, because the parties agreed, that the child was an invitee at the time of the accident. *Id.* at 637. This Court held that plaintiffs presented sufficient evidence to raise the jury questions of whether Maryland Farms had reason to believe that children played in the area near the trees and whether, by exercise of reasonable care, Maryland Farms could have discovered that the tree had not been trimmed away from the wire. *Id.* at 642. Our predecessors reasoned that Maryland Farms could have inferred from the presence of a bike rack near

31

the tree in question that children would be playing and climbing trees in the area.[11]  *Id.* at

641-42.  There was also evidence, this Court observed, that Maryland Farms had notice of

the wire's danger from an employee's prior accident, and that it might have discovered that

the tree was not trimmed because its agent was in the area almost daily.  *Id.* at 642.

Returning to the case on appeal, the circuit court held that Damien was a bare

licensee or trespasser while he was climbing the community sign because there was no

express or implied invitation from Appellees to climb it.  Appellants argue, extrapolating

largely from the cases discussed above, that the court erred in this determination because

Appellees should have expected that Damien might climb the stone wall of the community

---

[11] A series of cases out of New York suggests that it is reasonable to expect that children will play upon objects located on the common grounds of an apartment or condominium complex. *See, e.g.*, *Sarapin v. S. & S. Corrugated Paper Mach. Co., Inc.*, 209 A.D. 377, 378–79 (N.Y. App. Div. 1924).  In *Sarapin*, a seven-year-old boy lived with his parents in an apartment building in Brooklyn that had a yard reserved for use in common by the tenants.  *Id.* at 378.  The defendant placed several large machines in the yard and the children played upon them.  *Id.*  The court stated that the children were not trespassers upon the machines because the machines were located in an area where the children had a right to play.  *Id.* at 379.  Given that the child was not a trespasser, the court proceeded to examine whether the defendant had exercised reasonable care in leaving the machines where they were.  *Id.* at 380.  *See also Diven by Diven v. Vill. of Hastings-on-Hudson*, 156 A.D.2d 538, 539 (N.Y. App. Div. 1989) (noting that it is considered probable "that children will enter upon premises and 'climb about and play' often in ways that imperil their safety") (internal citation omitted); *Petersen v. Crawford*, 263 A. D. 617, 617 (N.Y. App. Div. 1942) (holding that the minor plaintiff was an invitee in the yard of the defendants' apartment house, and that the defendants should have anticipated the plaintiff would be injured by the defective condition of a retaining wall in their yard, which had long been used by the plaintiff and the tenants' children as a play space ); *Schmidt v. Cook*, 12 Misc. 449, 452 (N.Y. Com. Pl. 1895) ("[B]ut the defendants were bound to know that a stone . . . would naturally tempt children to play upon and about the same, and by reason thereof become dangerous to life and limb, and hence the defendants owed to the plaintiff and other children who played in the yard a duty of precaution against harm.").

32

sign.  They point out that there are no signs or barriers indicating that occupants and their guests were not permitted near it.

We agree with Appellants.  This case is clearly distinguishable from *Pellicot*, 181 Md. at 136, in which a child wandered behind a grocery store counter; and from *Levine*, 218 Md. at 76, in which a child deliberately left a restricted area unlocked in order to re-enter later without permission.  There is no dispute in the record that the community sign existed within the common areas of the condominium complex, and there is no evidence to suggest that there were any hard limits on which areas children could or could not play in.  Appellees have admitted there was no demarcation separating the area around the community sign from the rest of the common area.  There is evidence in the record that Damien and his siblings habitually played on the grassy area adjacent to the sign, and that they had climbed atop the community sign on multiple occasions in the past.  Recognizing that invitee status is reserved for persons who are in areas where they are permitted or expected to be, the record in this case does not support a determination that invitees on the common grounds of the Waters House condominium complex were not permitted on or near the community sign.  *See Pratt*, 42 Md. App. at 641-42.

On balance, we think it is reasonable and conceivable that a child may climb a stone sign that blends naturally into the grounds upon which the child is accustomed to playing. *See Flippo*, 348 Md. at 702; *see also Laser*, 58 Md. App. at 447 (noting that active children have a propensity to climb).  If it is to be expected, as in *Flippo* and *Pratt*, that children will climb trees, we think it is equally conceivable that a child may climb a five-foot-high sign made of large stones that can be used as handholds.  *See Flippo*, 348 Md. 680, 701-

33

02; *Pratt*, 42 Md. App. at 641-42. We conclude, therefore, that the mere act of climbing a climbable object, located in an area of the complex in which he was allowed to be, did not suddenly change Damien's legal status from an invitee to a trespasser—such a transposition is not favored by contemporary decisional law.

We do not hold or imply that a property owner has an obligation to put up signs and barriers on every inch of their property to avoid liability, as Appellees claim our holding would demand. It appears that both parties attempt to front-load the negligence determination in this case solely on the question of legal status. To be sure, we reject both parties' arguments on the issue of invitation. In support of their argument that Damien was a trespasser because he was not invited to climb the sign, Appellees pointed the trial court to the lack of mulched tire tread or signage indicating that the community sign was a play area. Appellants, on the other hand, claim that Damien was invited to climb the sign because there were no barriers or notices designed to prevent him from doing so. Without additional facts, we can no more conclude that property owners invite children to climb structures in common areas that are not surrounded by signs and barriers than we can conclude that property owners forbid climbing on all structures in common areas not surrounded by mulched tire tread.

Drawing all reasonable inferences from the material facts not in dispute in the light most favorable to the Appellees, we hold that Damien did not become a trespasser when he climbed onto the community sign located on the common grounds of the Waters House Condominium complex. Having clarified the knotty legal status question in this case, our analysis of the court's pivotal finding is more straightforward. As the trial court correctly

34

perceived, the instant case turns on the questions of notice and foreseeability rather than legal status. "The risk reasonably to be perceived defines the duty to be obeyed[.]" *Palsgraf v. Long Island R. Co.*, 162 N.E. 99, 100 (1928). Otherwise, property owners would be required to post an exhaustive list of prohibited activities on each structure on their property—even on trees.

## D. No Notice

Appellees contend that even if we determine that Damien was an invitee, "and remained an invitee during the critical time at issue," Appellants still failed to present "expert or other evidence that Appellees violated this 'highest duty of care.'" (Emphasis removed). Appellants respond that the issue of notice is not before the court, because Damien's "legal status was the focal point of the lower court's decision to grant summary judgment." However, the circuit court's principal ruling was that there was no breach of any duty to exercise reasonable care to make the premises safe or warn guests of a known danger because there was no evidence that Appellees knew or should have known of any potential danger.[12]

---

[12] In announcing that there was no evidence of negligence, the judge introduced his findings by saying that even if Damien were "a social guest or licensee by invitation," there can be no liability without a known dangerous condition. In ruling on the motion for summary judgment, the circuit court considered the standards of care for bare licensees and social guests, but went on to state unequivocally that "[t]here was no indication for the record that there was any reason to believe that [there] was a dangerous situation[]" and thus there was "nothing in the record to substantiate that the owner breached any duty that he would [owe to] Damien." Evidence of notice is crucial to a plaintiff's case, under even the most demanding standard of care, if it is to survive summary judgment. *See Richardson*, 184 Md. App. at 484, 498 ("Although we hold that Mrs. Richardson was an invitee, not a bare licensee [as the circuit court found], at the time of the incident, we affirm

The Court of Appeals has cited the Restatement (Second) of Torts with approval,[13] *see Deering Woods*, 377 Md. at 262-63, for the proposition that

> [a] possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343 (1965). More simply put, actual or constructive notice of a dangerous condition on the owner's premises is central to finding liability for any injury caused by the condition. *Hansberger*, s*upra*, 229 Md. App. at 21; *Joseph*, 173 Md. App. at 315. "Whether a condition on the possessor's land is one which the possessor should know involves an unreasonable risk of harm to invitees is closely related to, if not indistinguishable from, the extent of the possessor's duty to inspect[.]" *Deering Woods*, 377 Md. at 264–65.

The Court of Appeals has made plain that to generate a triable issue, under even the most demanding standard of care, some evidence that the premises owner knew or should have known of the dangerous condition is required. *See, e.g.*, *id.* at 273. "[T]o show constructive knowledge, [an] *invitee must demonstrate that [the] defective condition*

---

the circuit court's [grant of summary] judgment because, even with Mrs. Richardson's having invitee status, appellants failed to make a prima facie showing of negligence.")

[13] Maryland Courts of Appeal have repeatedly cited the Restatement (Second) of Torts with approval in the context of premises liability. *See, e.g.*, *Rhaney v. Univ. of Md. Eastern Shore*, 388 Md. 585, 602 (2005); *Crown Cork & Seal Co. v. Kane*, 213 Md. 152, 157 (1957); *Richardson v. Nwadiuko*, 184 Md. App. 481, 490, 492 (2009); *Deboy v. City of Crisfield*, 167 Md. App. 548, 556 (2006); *Cheyne*, 99 Md. App. at 159.

*existed long enough to permit one under a duty to inspect to discover the defect and remedy it prior to the injury.*" *Joseph*, 173 Md. App. at 316–17 (citing *Deering Woods*, 377 Md. at 267-68) (emphasis in original). "The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality or the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner or occupant and not known to the person injured that a recovery is permitted." *Pratt*, 42 Md. App. at 639 (citation omitted).

In the *Shields* case discussed above, the Court of Appeals held that the landlord could be found liable in negligence because he "knew or had reason to know that [a pit bull] posed a danger to those in the common area and, thus, had a duty to take reasonable measures to protect those lawfully on the premises." 350 Md. at 682. In that case, there was evidence adduced at trial that the dog was vicious and, more importantly, that the landlord had discussed the dog's potential dangerousness with the owner on numerous occasions. *Id.* at 670. Similarly, in *Sezzin*, the Court stated that because landlords expressly provided a laundry shaft for tenants' use and did not place any apparatus in the laundry shaft to catch garments that might fall alongside the hampers, the landlords should have known that a tenant may try to climb inside the dangerous shaft to rescue a stray garment. 187 Md. at 253-54.

In contrast to *Shields and Sezzin*, the Court of Appeals held in *Deering Woods* that there was no prima facie showing of negligence without evidence that the defendant should have known of the risk of black ice sufficiently prior to the time that the plaintiff slipped on it. 377 Md. at 267-68. We have similarly held that where there was no evidence that a

doctor knew of a slippery condition in his waiting room, he could not be liable to the guest of a patient who slipped and fell there. *Richardson*, 184 Md. App. at 496. Also instructive in this instance is *Joseph v. Bozzuto Management Company*, involving a man who slipped and fell on an oily substance in the stairwell of his father's apartment building. 173 Md. App. at 309. We held that it was appropriate for the circuit court to grant summary judgment in favor of the appellees because there was no evidence presented on the issue of knowledge. *Id.* at 319. We said that the fatal flaw in the appellant's argument was that he failed to proffer any "evidence to show that the appellees had actual or constructive knowledge of a dangerous condition, [and] he did not even allege such knowledge in his complaint." *Id.*

Returning to the case at bar, Appellants similarly did not present any evidence—nor did they allege in their complaint—that the Council or Summit had knowledge of a dangerous condition or defect in the community sign. Damien testified in his deposition that prior to the incident he did not see any problems with the community sign, feel any movement while playing on it, or hear any cracking or crumbling that might indicate a danger. His father also agreed in his deposition testimony that the sign "looked secure and safe." There was no evidence that anyone had ever been harmed by the community sign, or that there were any visible defects that might have put Appellees on notice that someone could be injured.

Because there is no basis in the record here for concluding that Appellees should have known that the flat stone sign was likely to fall from its framework, or that they could have discovered such a defect through the use of reasonable care, a jury would not have

38

been able to infer that Damien's accident could have been prevented through Appellees' use of reasonable care. *See Shields*, 350 Md. at 685-90. The duty to inspect is a function of the landowner's knowledge, actual or constructive, of the unreasonable risk. *Deering Woods*, 377 Md. at 264–65. Appellants did not adduce any evidence of direct or constructive knowledge on the part of Appellees that would give rise to a duty to inspect the community sign. *See id.* at 267-68. Without some showing by Appellants that Appellees could have, or did, perceive a risk posed by the sign, there can be no liability based in negligence. *See Richardson*, 184 Md. App. at 496; *see also Bozzuto Mgmt.*, 173 Md. App. at 319. "This knowledge, actual or implied, is the foundation of actionable negligence . . . and injuries which could by no reasonable possibility have been foreseen, and which no reasonably prudent person would have apprehended, cannot [form] the basis for actionable negligence." *Aleshire v. State to Use of Dearstone*, 225 Md. 355, 366 (1961); *see also Zilichikis v. Montgomery County*, 223 Md. App. 158, 187 (2015) ("[A]n entity charged with failing to maintain premises in a reasonably safe condition is entitled to summary judgment in its favor if it neither created nor actually knew of the hazard, and if there is no evidence showing that the hazardous condition existed for long enough for that party to remedy the hazard."). Here, Appellants' failure to proffer evidence of actual or constructive knowledge that the flat stone might fall from the community sign and injure someone dictates that "by time-honored Maryland and common law standards, [Appellants] failed to show a case of negligence against [Appellees.]" *Bozzuto Mgmt.*, 173 Md. App. at 319.

Accordingly, we hold that the record before the trial court supported granting summary judgment in favor of Appellees because, at the close of discovery, Appellants had adduced no evidence that Appellees had any actual or constructive notice of any dangerous condition.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**